549 So.2d 373 (1989)
STATE of Louisiana, Appellee,
v.
Wiley HALL, Jr., Appellant.
No. 20690-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Rehearing Denied September 21, 1989.
*377 Culpepper & Associates by Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Charles B. Bice, Dist. Atty., Winnfield, for appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
NORRIS, Judge.
The defendant, Wiley Hall Jr., also known as "Stroll," was charged by bill of information with four counts of distribution of cocaine, a Schedule II controlled dangerous substance, in violation of LSA-R.S. 40:967A(1). He proceeded to a jury trial and was convicted on Counts 2, 3 and 4. The trial judge then sentenced him to six years at hard labor on each count, with two to be served consecutively and the third concurrent. Hall now appeals, advancing 40 assignments of error. For the reasons expressed, we affirm.

I. Facts
The state's chief witness was an undercover agent, Sheriff's Deputy Reginald Fields. Dep. Fields was commissioned in Natchitoches Parish but during the time in question he was assisting the Winn Parish Sheriff's Office. Dep. Greggory Davies, who coordinated the Winn Parish drug investigation, testified that he hired Fields for the undercover work. Dep. Fields testified that he purchased what was later determined to be cocaine from a person he knew as "Stroll" or "Strobe," whom he identified at trial as the defendant. According to Dep. Fields, these transactions occurred on August 14, 1986 at Hall's house on Brown St. in Winnfield; on February 11, 1987 outside Holmes Dairy World on Martin Luther King Dr. in Winnfield; and on February 13 and April 3, 1987 at Hall's house. State Troopers Gremillion and Ballance performed surveillance and observed Fields and Hall at Hall's house on April 3, when the last alleged sale occurred. As noted, the jury acquitted Hall on the August 14 count but convicted him on the other three.

II. Discussion: Pre-trial rulings
Assignment No. 2
By his second assignment Hall claims the trial court erred in refusing to grant his motion to sever counts. Prior to trial he filed a motion to sever counts pursuant to LSA-C.Cr.P. art. 495.1, which provides:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
In support of the motion, defense counsel argued to the trial court that the charging of four separate offenses would unduly prejudice Hall and that the length of time involved, from August 1986 to April 1987, would serve to confuse the jury.
A defendant who alleges prejudicial joinder bears a heavy burden of proof. State v. Washington, 386 So.2d 1368 (La.1980). The motion to sever addresses itself to the trial court's great discretion and the court's ruling will not be disturbed absent a showing of abuse of that discretion. State v. Washington, supra; State v. Williams, 418 So.2d 562 (La.1982). The trial court must weigh the possibility of prejudice *378 against the important considerations of judicial economy and administration. The court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the jury would use the crimes charged to infer a criminal disposition; and whether the multiplicity of crimes charged might make the jury hostile to the defendant. State v. Washington, supra; Drew v. United States, 331 F.2d 85 (D.C.Cir.1964).
In light of all the factors, the court's ruling was not an abuse of discretion. The trial court in denying the instant motion noted that every count charged the same offense, so there was no real chance of confusing the jury. The applicable law was the same for each count and the jury's only task was to separate the evidence of each alleged act. The state's witnesses, especially Dep. Fields, carefully divided their testimony between the specific counts. As the prosecutor argued, the eight month stretch would tend to help the jury differentiate the acts rather than to confuse them. Moreover, the state's evidence was direct and straightforward, and Hall's defense, which consisted of a methodical effort to discredit the state's witnesses, does not appear to have been confounded or foiled. Finally, there is no indication that the jury inferred a criminal disposition or became hostile toward the defendant; this is borne out by the jury's choice to acquit him on one count. See State v. Lowe, 485 So.2d 99 (La.App. 2d Cir.1986), writ denied 488 So.2d 199 (La. 1986).
In sum, Hall has not met the heavy burden of proving that he was clearly prejudiced by the denial of his motion to sever. The trial court was well within its discretion, and this assignment does not present reversible error.
Assignment No. 3.
By this assignment Hall claims the trial court erred in refusing to grant his motion for a continuance. Before trial, Hall filed this motion pursuant to LSA-C. Cr.P. art. 712, which provides that the trial court in its discretion may grant a continuance if there are good grounds for it. Hall urges, in essence, that due to the circumstances of the case his attorneys did not have time to prepare for trial.
A review of the minutes and pleadings shows the following sequence of events. At the 72-hour hearing on April 10, 1987, the trial court appointed Herman A. Castete to represent Hall. When he appeared for arraignment on June 10, Hall advised the court his attorney would be Danny Wood of Baton Rouge; the court set trial for the week of August 24 and ordered Hall to appear in court on July 6. When Hall appeared on July 6, he was unrepresented; the court referred him to the indigent defender board, which found him eligible, and Herman Castete was again appointed. Trial remained set for the week of August 24. On August 19, Herman Castete filed a joint motion with Bobby Culpepper and David T. Caldwell for Castete to withdraw and Culpepper and Caldwell to enroll as counsel. This motion was granted the next day, August 20.
At the hearing on the motion, Hall testified that Mr. Castete, his court-appointed lawyer, was too tied up with his other cases to meet with him and prepare for trial. Hall said that after the trial date was set on July 6, he attempted several times to reach Mr. Castete but actually met with him only once, on which occasion they did not discuss the facts of the case. According to Mr. Caldwell, Hall's mother talked to him on August 18 and expressed concern that Mr. Castete was not giving adequate time to the case. Apparently Mr. Caldwell then accepted the case and collected the file from Mr. Castete's office; they prepared the joint motion. Mr. Culpepper, who actually tried the case, testified that he had no occasion to meet with Hall until early on the morning of trial, August 26.
The granting or denial of a motion for continuance rests within the trial court's sound discretion. State v. Champion, 412 So.2d 1048 (La.1982). Denial of continuance will not be disturbed on appeal absent an abuse of discretion and a showing of *379 specific prejudice resulting from the denial. State v. Benoit, 440 So.2d 129 (La.1983); State v. Haarala, 398 So.2d 1093 (La.1981). An example of specific prejudice is shown in State v. Benson, 368 So.2d 716 (La.1979), in which the state declared its intent to introduce expert handwriting analysis of a robbery note allegedly written by the defendant. The defense requested a continuance for time to hire its own handwriting expert and have him analyze the note. The trial court denied the motion but the supreme court reversed, holding the defense was prejudiced by not being allowed the time to get expert evidence.
In the instant case we see neither abuse of discretion nor specific prejudice. On July 6, the court set its trial date for the week of August 24. Both Hall and his new counsel were aware of the impending trial on August 18 when they accepted the case. New counsel were presumably aware of their own trial obligations as well, even though Mr. Caldwell admitted not discussing his heavy schedule with Hall when they talked on August 18. R.p. 419. A criminal defendant must exercise his right to counsel of his choice in a reasonable and timely manner that does not interfere with the orderly and fair administration of justice. State v. Seiss, 428 So.2d 444 (La.1983); State v. Sensley, 460 So.2d 692 (La.App. 1st Cir.1984), writ denied 464 So.2d 1374 (La.1985). If Mssrs. Caldwell and Culpepper did not have time to prepare the case, they should have disclosed this before accepting it. We would note that Mr. Culpepper is a skilled trial attorney who is sure to have understood the demands of both Hall's case and any other drug cases he was scheduled to try that week. As for prejudice, the defense has not stated how its trial strategy would have differed had the continuance been granted. The showing is inadequate. See State v. Haarala, supra. Elsewhere in brief, the defense argues it would have attempted to find a witness to testify in Hall's behalf. The prospects of finding this witness, however, and the content of his testimony are highly speculative, and do not provide grounds for a continuance. See State v. Hills, 379 So.2d 740 (La.1980); State v. Rosales, 498 So.2d 66 (La.App. 5th Cir.1986).
This assignment does not present reversible error.
Assignments Nos. 6 & 7.
By these assignments Hall claims the trial court erred in denying his motion for change of venue and in refusing to allow defense counsel to call certain prospective jurors at the hearing on the motion. The defense's motion, filed before trial, was based on LSA-C.Cr.P. art. 621. A hearing was conducted on the morning trial began. At this hearing, the judge allowed the parties to question nine prospective jurors as to their opinion and possible influence; however, the judge refused to let the defense call additional prospective jurors who had testified on voir dire of another drug trial the day before, State v. Tony Charles Lewis. By its motion, the defense urged that Hall could not get a fair trial because of the publicity surrounding the numerous narcotics arrests and subsequent trials in Winn Parish. Apparently Hall's arrest and trial were only one of several arising from a drug "sting."
Change of venue is regulated by LSA-C. Cr.P. art. 622, which provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of the jurors on the voir dire examination or the testimony of witnesses at the trial.
A number of factors must be considered in determining whether a change of venue is appropriate. These include (1) the nature of pretrial publicity and the particular degree to which it has circulated in the community; (2) the connection of government officials with the release of the publicity; (3) the length of time between the dissemination of the publicity and the trial;
*380 (4) the severity and notoriety of the offense; (5) the area from which the jury is to be drawn; (6) other events in the community that might affect or reflect the attitude of the community; (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. State v. Bell, 315 So.2d 307 (La.1975); State v. Henry, 446 So.2d 1308 (La.App. 2d Cir. 1984). The court may also consider the level of publicity in the area to which the venue could be changed; the care exercised and the ease encountered in selecting the jury; the prospective jurors' familiarity with, and resultant effect of, the publicity; the peremptory challenges and challenges for cause exercised by the defendant in jury selection. State v. Berry, 329 So.2d 728 (La.1976); State v. Henry, supra. The defendant bears the burden of proving that he cannot obtain a fair trial in the parish where the prosecution is pending. State v. de la Beckwith, 344 So.2d 360 (La.1977). The trial court has great discretion in granting or denying a change of venue. State v. Flood, 301 So.2d 637 (La.1974), cert. denied 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). A reviewing court may nevertheless make an independent valuation of the facts to determine whether the accused received a fair trial, unfettered by outside influences. State v. David, 425 So.2d 1241 (La.1983), cert. denied after remand 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986).
In an effort to prove the nature of the publicity and its saturation, the defense offered clippings from the Winn Parish Enterprise, as well as a transcript of news reports aired by radio station KBCL. The majority of the newspaper articles and radio reports involve the other suspects; Hall's name appears to have been mentioned only once in the paper and twice on the radio, and on those occasions only as one of about 45 suspects arrested. Items of a strictly factual nature will not, in and of themselves, warrant a change of venue. State v. Giovanni, 409 So.2d 593 (La.1982); State v. Henry, supra. The trial court was not wrong to consider these items factual. Furthermore, it is not true that any publicity about drug arrests and convictions will necessarily affect the defendant's right to a fair trial. State v. Fickes, 497 So.2d 392 (La.App. 3d Cir.1986), writ denied 515 So.2d 1105 (La.1987). While there was publicity about the arrests, it did not mandate a change of venue.
An examination of the other factors shows that although some would counsel in favor of a change of venue, most would not. There does not appear to have been any special connection of government officials with the release of publicity. The length of time between the arrests and the trial, about four and a half months, is admittedly short. The entire "sting" operation was fairly big news but Hall's involvement, as judged from the news releases, was small. The area from which the jury is to be drawn is Winn Parish, which is a somewhat limited area, but there is nothing unusual about drawing a jury from a parish for a district court trial. The subsequent convictions of other "sting" suspects could possibly influence prospective jurors.
By his seventh assignment, Hall contests the procedure used to test prospective jurors for familiarity with the publicity complained of. As in State v. Bell, supra, and State v. Baldwin, 388 So.2d 679 (La.1980), the court conducted a "mock voir dire." Defense counsel submitted the names of ten prospective jurors for examination. After the first two were questioned, however, the state objected, claiming that the defense's list consisted entirely of those who had already been questioned by Mr. Culpepper at voir dire in the previous day's drug trial and had then admitted holding a fixed opinion of the case. The state argued that the mock voir dire would not serve its purpose if the selection was not truly random but "stacked" with partial venire members. The trial judge decided to allow questioning of three more from the defense's list, and then to take the next five names off the venire. Nine were ultimately called. The defense objected that it could call "any prospective juror" it wanted. R.p. 384.
The purpose of a mock voir dire is to determine whether an impartial jury can *381 be selected and whether influences in the community would affect the answers of jurors on voir dire, or of witnesses at trial, or whether for any other reason, a fair and impartial trial could not be obtained in the parish. State v. Bell, supra at 313; art. 622. While we recognize the right to call prospective jurors to establish influence, we feel that calling a demonstrably nonrandom sample of jurors who have already admitted opinions or influence, does little to serve the objectives announced in Bell. The trial judge effected a reasonable compromise by using part of the defense's list and a random sample. Under the circumstances, his refusal to allow defense counsel to call certain witnesses was not an abuse of discretion.
The mock voir dire showed that seven of nine prospective jurors had no fixed opinion of the case. Each of these seven testified that nothing in the media or any other source had influenced his thinking. One prospective juror said it would be "hard" for her to be objective. The other prospective juror, who had previously testified that her opinion was fixed, stated that she changed her mind and would give the defendant the benefit of the doubt. With this testimony, the trial court was entitled to conclude that a fair jury could be selected and that neither jurors nor witnesses would be unduly influenced by the pretrial publicity or any other source. The trial court did not err by denying the motion for change of venue. These assignments do not present reversible error.

III. Assignments pertaining to selection of the jury
Assignment No. 4.
This assignment is neither argued nor briefed. It is therefore abandoned. URCA-Rule 2-12.4; State v. Williams, 338 So.2d 672 (La.1976).
Assignments Nos. 5 & 8.
By these assignments, Hall claims the trial court erred in refusing to grant his supplemental motion to quash the petit jury venire, and in allowing the state to introduce evidence from a matter styled State v. Tony Charles Lewis in connection with this motion. He argues, in essence, that he was unable to receive a fair trial because the petit jury venire had become prejudiced toward him after sitting through voir dire examination and jury selection in other drug cases.
A petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable harm to the defendant, or unless persons were systematically excluded from the venire solely on the basis of race. LSA-C.Cr.P. art. 419; LSA-R.S. 13:3051. The law presumes the legality of a venire and he who asserts the contrary must prove it. State v. Dallao, 187 La. 392, 175 So. 4 (1937), app. dism. 302 U.S. 635, 58 S.Ct. 51, 82 L.Ed. 494 (1937). The defendant has the burden of proving fraud or that some irreparable injury was caused by the selection process. State v. Liner, 397 So.2d 506 (La.1981); State v. Sheppard, 350 So.2d 615 (La.1977).
The instant record does not show fraud in the selection of the jury venire. True, the potential jurors sat through a voir dire proceeding in State v. Tony Charles Lewis only a day or so earlier. However, on voir dire of the instant trial, most denied that anything influenced their objectivity. Only one prospective juror, Mrs. Frederick, seems to have been affected by the prior voir dire. The evidence simply does not support Hall's claim of fraud or great wrong. Moreover, the alleged inability to draw an impartial jury is more properly remedied by a motion for change of venue than to quash the venire. State v. Monroe, 397 So.2d 1258 (La.1981), cert. denied 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983). Assignment No. 5 does not present reversible error.
As for Assignment No. 8, the evidence complained of, a set of transcripts from State v. Tony Charles Lewis, was offered to the court, not the jury. There is therefore no way it could have influenced the jury. This assignment lacks merit.
In brief, Hall also alleges that a letter was written on the district attorney's stationery, signed by him and sent to prospective jurors with directions to complete an *382 enclosed questionnaire and return it. A letter of this sort is considered unethical, prejudicial to the defendant and requires a new trial. State v. Bates, 508 So.2d 1346 (La.1987). In the instant case, however, the defense presented absolutely no evidence to prove that such a letter and questionnaire was ever sent or even existed. The state in brief denies these claims. We will not entertain an argument such as this, based on totally unsubstantiated allegations.
Assignment No. 1.
By this assignment Hall claims the trial court erred by refusing to let counsel question prospective jurors outside the presence of the selected jurors and other prospective jurors. In essence, he argues that individual voir dire was required to minimize the effect of answers by venire members who had prior knowledge of the offense, on those who had none. The defense moved to sequester the venire and conduct questioning individually. The trial court denied the motion but said that if an individual juror stated that he had a fixed opinion and counsel needed to examine him more closely, the court would move examination into chambers. R.p. 453.
The law neither prohibits nor requires the sequestration of prospective jurors for an individual voir dire. State v. Copeland, 419 So.2d 899 (La.1982); State v. Wilson, 467 So.2d 503 (La.1985), cert. denied 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). The manner in which venire members are called is left to the trial court's discretion. State v. Kirkpatrick, 443 So.2d 546 (La.1984), cert. denied 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984); State v. David, supra. The defendant bears the burden of showing the court abused its discretion in refusing to sequester the venire at voir dire. State v. Kirkpatrick, supra; State v. Wilson, supra. The defendant must show special circumstances indicating why individual voir dire is warranted. State v. Monroe, 397 So.2d 1258 (La. 1981), cert. denied 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983); State v. Jackson, 450 So.2d 621 (La.1984). To meet the burden, the defense must show more than that other potential jurors would hear answers. State v. Wilson, supra. The defense must show a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material. State v. David, supra.
Apart from general allegations, the defense has not shown that any prospective juror was polluted by exposure to another's answers. On the face of the record we do not see that anyone was rendered ineligible to serve. The defense has not shown, and we do not find, special circumstances to merit individual voir dire. What we do find is a trial court willing to conduct private voir dire in chambers; however, the court never saw need to order, and the defense never requested, this procedure. This assignment does not present reversible error.
Assignments Nos. 9, 12 & 13.
By these assignments Hall claims that the state's peremptory challenges of prospective jurors Mayfield, Norman and Childs, all of whom like Hall are black, were racially discriminatory and deprived him of equal protection under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also State v. Mims, 505 So.2d 747 (La.App. 2d Cir.1987). The state in brief asserts that it provided sufficient neutral explanations for excluding these prospective jurors.
We would note at the outset that the jury which ultimately convicted Hall had at least four black, and six white, jurors (two jurors' race is not stated in the record); and the alternate was black. At voir dire, the state used only five peremptory challenges, four on blacks. At the very least these facts raise an inference that the state was not using its peremptory challenges in a discriminatory fashion, since it could have easily used its seven remaining challenges to "weed out" more black jurors. We therefore question whether Hall has made a requisite showing for a prima facie case as required by Batson.
Even assuming without holding that there was a prima facie case, we find the evidence fully supports the trial court's conclusion that the state provided reasonable, *383 neutral reasons for peremptorily challenging these witnesses. The state showed that Mr. Mayfield knew Hall by name, well enough to wave at him; had seen Hall only a week earlier; he knew Hall's sister and had heard of his father. The state asserted that it did not believe some of Mr. Mayfield's answers, especially about how well he knew Hall's sister and some other people arrested in the "sting." The state felt he was evasive and seemed to have better rapport with defense counsel; Mr. Mayfield admitted knowing Mr. Culpepper. These are sufficient, neutral reasons for challenging Mr. Mayfield.
As for Ms. Norman, the state explained that it did not like her answers, as she seemed not to like the questions; the state also disbelieved some of her answers. Defense counsel argued that under this standard, the state could exclude any black if it was inclined to discriminate. Admittedly the state's reasons for challenging Ms. Norman are not as readily apparent from the record as for Mr. Mayfield. However, the ultimate burden of persuasion lies with the defendant. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). Like the United States Supreme Court, we will not easily disturb the trial court's decision in the absence of plain abuse of discretion. See Batson, supra, fn. 21.
As for Mr. Childs, the state did not enunciate reasons for its peremptory challenge, stating instead that the record would speak for itself. Indeed, Mr. Childs admitted he had known Hall since 1961, as well as his entire family; they grew up and went to school together. Mr. Childs said he would "probably" vote to convict if proof was made beyond a shadow of a doubt, but he would be reluctant to do so since both he and Hall were veterans. The state challenged Mr. Childs for cause, but the court denied it; the state then exercised a peremptory challenge. The facts undermine any claim of discrimination in challenging this juror. These assignments do not present reversible error.
Assignment No. 11.
By this assignment Hall claims the trial court erred in sustaining the state's challenge for cause of prospective juror James, a black man. The state used only five of its twelve peremptory challenges, and the defense may complain only when the allowance of a challenge for cause operates to afford the state more than the legal amount. LSA-C.Cr.P. art. 800; State v. Peterson, 446 So.2d 815 (La.App. 2d Cir. 1984). Thus this claim is, strictly speaking, inappropriate. Since, however, the defense has included it with the Batson arguments, we will consider the propriety of the court's sustaining this challenge for cause. The state's racially neutral explanation for peremptorily challenging a prospective juror need not rise to the level that would justify a challenge for cause. See Batson, supra, 106 S.Ct. at 1723. Conversely, a showing sufficient to justify a challenge for cause will preclude a claim of racial discrimination under Batson.
At voir dire Mr. James stated that he had known Hall's family for years and considered himself a close personal friend of Hall's; for this reason he would have a hard time pronouncing a verdict of guilty on him. R.p. 542. He stated that in order to convict, he would require proof beyond a shadow of a doubt.
The grounds for a challenge for cause are set out in LSA-C.Cr.P. art. 797, which provides:
Art. 797. Challenge for cause
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, *384 the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict.
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.
Neither the state nor the court specified which ground this challenge was based on, but apparently either subsection (3) or (4) is applicable. Under subsec. (3), mere friendship is not enough to excuse a juror; the relationship must be such as would influence the juror's ability to reach an impartial verdict. State v. McIntyre, 381 So.2d 408 (La.1980), cert. denied 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980); State v. Shelton, 377 So.2d 96 (La.1979). The state satisfied both facets of these dual requirements. As for subsec. (4), Mr. James appeared convinced that the burden of proof is "beyond a shadow of a doubt," and was not inclined to accept the correct standard as instructed by the court under LSA-R.S. 15:271. This is sufficient to excuse a juror for cause. See State v. Winfrey, 359 So.2d 73 (La.1978).
The grant of the challenge for cause was not an abuse of discretion. State v. Sugar, 408 So.2d 1329 (La.1982); State v. Lewis, 391 So.2d 1156 (La.1980). This assignment does not present reversible error.
Assignment No. 10.
By this assignment Hall claims the trial court erred in not sustaining his challenge for cause of prospective juror Deas. He contends that she was not impartial.
The trial court has broad discretion in ruling on a challenge for cause. State v. Sugar, supra; State v. Lewis, supra. A prospective juror who appears to be biased may be rehabilitated if the court is satisfied that she can render an impartial verdict according to the evidence and instructions. State v. McIntyre, supra; State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983).
Only a day or so before the instant voir dire hearing, Ms. Deas was called as a prospective juror in State v. Tony Charles Lewis. On that occasion she said she had heard people talking about the case; she did not think she could give up her opinion of it. R.p. 172. The state challenged her for cause and she was excused. At the instant hearing, she stated that she had a fixed opinion as to one of the cases stemming from the drug "sting," but she carefully explained she had no such opinion as to Hall's case. She stated that what she heard about another case would have no bearing on her judgment in this case; that she could remove her other opinion from her mind; and that she could vote impartially. R.p. 533.
From this testimony the trial court was entitled to conclude that Ms. Deas was rehabilitated. As we perceive no abuse of discretion, this assignment does not present reversible error.

IV. Assignments pertaining to trial procedure
Assignments Nos. 14 & 15.
By these assignments Hall claims the trial court erred in refusing to grant a mistrial for allegedly prejudicial remarks in the state's opening statement. At one point the prosecutor stated that the undercover agent came to Winn Parish to pose as a buyer of drugs and "contact persons known to be sellers or pointed out to him to be sellers." R.p. 619. Later he stated that the undercover agent and the defendant had a conversation about buying and selling drugs. Hall claims these statements were prejudicial in that they caused the jury to believe that he was "known" to be selling drugs, and went beyond the evidence yet adduced.
The state's opening statement shall explain the nature of the charge and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge. LSA-C.Cr.P. art. 766. The trial court has wide discretion in controlling the scope and extent of the opening statement. State v. Brown, 428 So.2d 438 (La.1983); State v. McClinton, 399 So.2d 178 (La.1981).
*385 When the defense objected to the "known to be sellers" remark, it asked for a mistrial, apparently under LSA-C.Cr.P. art. 770(2), which provides:
Art. 770. Prejudical remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; * * * [.]
We have analyzed this remark in light of the entire opening statement and we do not share the defense's view that it refers to other crimes evidence. The prosecutor was saying why Dep. Fields was in Winn Parish; he was plainly referring to a rash of drug activity that necessitated the undercover operation. We perceive no intent on the prosecutor's part to allege that Hall was the seller Dep. Fields was looking for. The prosecutor was offering an explanation of why an officer from Natchitoches Parish was working in Winn. An analogous situation was presented in State v. Madison, 345 So.2d 485 (La.1977). There the court held it was not reversible error to introduce evidence of another crime, which led to further investigation, as long as it did not suggest that the defendant committed the other crime. In the instant case, the state's opening statement may perhaps have indicated drug distribution, but it did not indicate distribution by the defendant. The testimony in Madison and the remark in the opening statement here were both designed to inform the jury why law enforcement officials were where they were.
Moreover, the remark appears to have been within the proper scope of an opening statement. It was substantially similar to testimony given by Dep. Fields at R.p. 639. A similar, if not more prejudicial, opening statement was considered in State v. Marquer, 446 So.2d 1258 (La.App. 4th Cir.1984), writs denied 450 So.2d 359 and 452 So.2d 168 (La.1984), cert. denied 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984). The defendants in Marquer were charged with distribution of CDS, a violation of LSA-R.S. 40:969. In its opening statement, the state referred to the defendants as running a "dope business" and having "dope addict" friends and partners. The trial court overruled the defense objection, noting that the statements explained the state's theory of the case; the appellate court found no abuse of discretion. There is a fortiori no abuse of discretion here and this assignment does not present reversible error.
As to the prosecutor's reference to a conversation between Dep. Fields and the defendant on August 14, this objection was properly overruled. The defense objected on grounds that the conversation might not be admissible at trial and was therefore improper in opening statement. However, Dep. Fields testified to this conversation at trial without objection. R.p. 641. No prejudice could have resulted since Hall was acquitted of the August 14 charge. This assignment lacks merit.
Assignments Nos. 16, 19, 20, 21 and 22.
By these assignments Hall contends the trial court erroneously allowed Dep. Fields to testify to matters that were hearsay. We note, however, that at trial the defense did not base its objections on hearsay. Additional grounds for objection cannot be raised for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Burdgess, 434 So.2d 1062 (La.1983); State v. Francis, 345 So.2d 1120 (La.1977), cert. denied 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977). The defense cannot now urge that these statements were hearsay. State v. O'Neal, 501 So.2d 920 (La. App. 2d Cir.1987), writ denied 505 So.2d 1139 (La.1987). We have therefore reviewed these items in light of the grounds actually advanced at trial.
Assignments Nos. 16 and 20 involve testimony of Dep. Fields as to conversations he had with the defendant on February 11 and April 3. The defense objected, urging lack of notice. Notice was plainly given in *386 the state's answer to application for bill of particulars on August 11, 1987, about two weeks before trial. R.p. 40. These assignments are meritless.
Assignment No. 19 involves Dep. Fields testifying from copies of notes, the originals of which had been destroyed. The defense urged the originals were best evidence. LSA-R.S. 15:436 (now repealed) provides that the best evidence which from the nature of the case must be supposed to exist, and is within a party's control, must be produced. In the instant case, the original notes were no longer within the state's control, so the best evidence rule is not strictly applicable. Moreover, the rule must be applied sensibly and with reason. Absent a showing of prejudice, a conviction will not be reversed on grounds that best evidence was not produced. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Bennett, 341 So.2d 847 (La.1976). There is no indication that Dep. Fields's trial notes, showing the time, date, place and subject's name, were inaccurate representations of the originals. We see no prejudice here.
Assignment No. 21 involves Dep. Fields's mention of a conversation between himself and Troopers Ballance and Gremillion on April 3. We find no contemporaneous objection raised to this testimony; it cannot now be urged on appeal. LSA-C. Cr.P. art. 841; State v. McDonald, 414 So.2d 735 (La.1982). We also note that Dep. Fields did not even testify as to what the troopers said; he testified only that he "told them the situation." This was not offered to prove the truth of the matter asserted and is not hearsay. LSA-R.S. 15:434 (now repealed); LSA-C.Ev. art. 801C. This assignment lacks merit.
Assignment No. 22 arises from Dep. Fields's comment that on April 3, when a city police car drove by, Hall asked Fields whether he was "holding anything." The defense objected urging lack of notice, irrelevancy and immateriality. Notice was given in the state's answer to application for bill of particulars. R.p. 40.
To be admissible in a criminal proceeding, the evidence must be relevant to a material issue. LSA-R.S. 15:435 (now repealed). Relevant evidence is that tending to show or negate the commission of the offense and the intent. LSA-R.S. 15:441 (now repealed); LSA-C.Ev. arts. 401, 402. The trial court has wide discretion in determining the relevancy of evidence and its ruling will not be disturbed absent a clear showing of abuse. State v. Kahey, 436 So.2d 475 (La.1983); State v. Miles, 402 So.2d 644 (La.1981). Setting aside the issues of relevancy and materiality, we find this evidence was properly admitted as part of the res gestae of the offense. LSA-R.S. 15:447, 448 (now repealed); LSA-C.Ev. art. 801D(4). Louisiana's res gestae doctrine is broad; it includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers as to what they heard or observed before, during or after the crime, if the continuous chain of events is evident under the circumstances. State v. Kimble, 407 So.2d 693 (La.1981); State v. Johnson, 440 So.2d 838 (La.App. 2d Cir.1983). Hall's statements to Dep. Fields when the city police car drove by easily qualify as part of the res gestae, occurring right in the middle of the transaction.
These assignments do not present reversible error.
Assignment No. 17.
By this assignment Hall claims the trial court erred in refusing to grant a mistrial when the prosecutor continued, despite an admonition, to refer to the purchase of "cocaine" instead of "suspected cocaine" when there was no evidence of the powder's composition. The defense correctly points out that the court sustained an objection to the use of the word "cocaine" only four transcript pages before the prosecutor used it again. R.p.p. 645, 649.
The grounds for mandatory mistrial are set out in LSA-C.Cr.P. art. 770. Referring to suspected cocaine as simply "cocaine" does not amount to a comment about (1) race, religion, color or national origin; (2) inadmissible other crimes evidence; (3) the defendant's failure to testify; or (4) the *387 judge's refusal to direct a verdict. Mandatory mistrial, therefore, was not warranted. See State v. Marquer, supra.
Discretionary mistrial is available for remarks not governed by art. 770 but which are irrelevant or immaterial and of such a nature that they might create prejudice against the defendant in the mind of the jury. LSA-C.Cr.P. art. 771. Mistrial is a drastic remedy and warranted only when trial error results in substantial prejudice to the defendant, depriving him of a fair trial. State v. Smith, 418 So.2d 515 (La. 1982); State v. Cushenberry, 407 So.2d 700 (La.1981). The determination of whether prejudice has resulted lies in the trial court's sound discretion. State v. McLeland, 456 So.2d 633 (La.App. 2d Cir.1984), writ denied 461 So.2d 312 (La.1984). Later in the trial, criminalist Linda Armstrong and forensic chemist T.J. Shuflin identified the packets of powder as cocaine. Lab reports were also admitted. The earlier references to "cocaine" were accurate and could not have prejudiced the jury. The trial court's refusal to grant a mistrial was not an abuse of discretion. This assignment does not present reversible error.
Assignment No. 18.
By this assignment Hall claims the trial court erred in allowing the state to introduce into evidence exhibits S-2, 3, 4, 5, 6 and 7 without a proper foundation. These exhibits are photographs: three of the house where the sales occurred, and three of the car from which the sale of February 11 was made. The defense correctly points out that evidence requiring a foundation must be preceded by the proper foundation, but in brief it does not say how this foundation was lacking.
The photographer need not verify the pictures in order to lay a foundation for their admission into evidence. State v. Anthony, 347 So.2d 483 (La.1977); State v. Cass, 356 So.2d 936 (La.1977); State v. Robertson, 358 So.2d 931 (La.1978). Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and when they tend to shed light upon the matter before the court. State v. Robertson, supra, and citations therein. Whether a photograph has been sufficiently identified to be admitted is largely a matter of the trial court's discretion. State v. Anthony, supra.
Dep. Fields testified that he bought cocaine from Hall on four separate occasions: three times from a house on Brown St. and once from out of a green Chevrolet. He testified that exhibits S-2, 3 and 4 represented the house and S-5, 6 and 7, the Chevy. Dep. Davies testified that he took the pictures in S-2, 3, 4 and 7, and was present when Dep. Alsup took S-5 and 6; he added that all the photographs accurately identified their subject matter. The court did not abuse its discretion in holding that there was a proper foundation for admitting these exhibits. This assignment lacks merit.
Assignments Nos. 23, 24 & 30.
By these assignments Hall claims the trial court erred in allowing Dep. Fields to testify that he saw Hall between February 11 and April 3, 1987; in allowing Trooper Gremillion to testify that he saw Hall in Winn Parish after April 3, 1987; and in admitting exhibit S-11, a photograph of Hall, into evidence. He urges that this evidence was not relevant because it was not connected with the subject transactions and it prejudiced the jury.
As noted earlier, relevant evidence is that tending to show or negate the commission of the offense and the intent. LSA-R.S. 15:441 (now repealed); LSA-C.Ev. arts. 401, 402. The trial court's decision as to relevancy is entitled to great weight and will not be overturned absent a clear abuse of discretion. State v. Smith, 418 So.2d 515 (La.1982); State v. West, 419 So.2d 868 (La.1982). Evidence which is relevant and otherwise admissible should not be barred just because it is prejudicial. State v. Smith, supra; State v. Clift, 339 So.2d 755 (La.1976).
The prosecutor argued at trial that this evidence was relevant to bolster Dep. *388 Fields's identification of the defendant; the trial court admitted it for this purpose. R.p. 660. A major thrust of the defense was to assert that Hall simply was not the person who sold the drugs, and that Dep. Fields's power of recollection was not so good. R.p.p. 836-838. Against this sort of argument, the state was entitled to show that its witnesses had seen the suspect on more than a few isolated occasions. The testimony served to show that their identification was not faulty. The photograph increased the likelihood that they could accurately state that Hall was the person who sold the cocaine. This evidence was relevant and, under the circumstances, we perceive no abuse of discretion. These assignments do not present reversible error.
Assignment No. 25.
By this assignment Hall claims the trial court erred in restricting the cross-examination of Dep. Fields. When the defense was questioning Dep. Fields, the state objected to the materiality of certain questions. The court sustained the objections. R.p.p. 680-682. The defense did not, however, raise a contemporaneous objection as required by LSA-C.Cr.P. art. 841.
This precise situation was addressed in State v. Charles, 326 So.2d 335 (La.1976). There the defendant contended the trial court erroneously sustained the state's objections to cross-examination questions asked by defense counsel. Although the defense did not expressly object, the court was necessarily aware of the action the defense wanted to take, namely to overrule the state's objection and allow him to put the questions to the state's witness. However, the defense neither complained of the trial court's ruling nor apprised the court of the grounds on which he was entitled to ask the questions. Instead he appeared to acquiesce in the court's ruling by proceeding with a different line of questioning. The supreme court held that since the defense did not comply with art. 841, it could not complain after verdict of the occurrences cited in these assignments of error. To allow otherwise would deprive the trial court of the opportunity to recognize and correct errors during trial, and would impede judicial efficiency.
In the instant case, defense counsel responded to the state's objection simply by saying, "He's under cross." Counsel did not urge an objection, so we will not now consider his argument, in accord with State v. Charles, supra. We will note parenthetically that the defense's question, whether the sellers' suppliers were being pursued, does not strike us as relevant to Hall's trial. This assignment lacks merit.
Assignment No. 27.
By this assignment Hall claims the trial court erred in allowing the jury to go to lunch without giving them any instructions. The lunch recess on August 27, 1987, is reflected at R.p. 703. When the court recessed, the jury was not present; the court was ruling on a legal matter (discussed under Assignment No. 26, infra). The defense did not ask the court to admonish the jurors before releasing them; it simply asked for a mistrial right after the recess. The court had previously given the jury emphatic directions not to discuss the case with anybody outside the courtroom after the jury had been selected, sworn and seated. R.p.p. 615-616. This occurred on August 26, just before the court recessed until the next morning.
In support, the defense cites LSA-C. Cr.P. art. 791, which regulates the sequestration of jurors. This article is not really applicable, although the official revision comment notes that trial judges, as a practical matter, always admonish the jurors at the beginning of each recess not to discuss the case. According to the comment, a provision to this effect was excluded because it was considered "minutiae." It is difficult to conceive how such a rule, deemed inconsequential by the drafters and intentionally omitted from the article, could result in reversible error absent even an allegation of prejudice. The defense cites no cases in support and does not argue prejudice. It merely poses the unsubstantiated possibility that the jury might have discussed the case among themselves or with others.
*389 We find no Louisiana cases on point. The vast weight of federal jurisprudence, however, holds that failure to admonish a jury before a recess is not reversible error absent a showing that the jurors did discuss the case or that some prejudice resulted. See, e.g., United States v. Richardson, All 477 F.2d 1280 (8th Cir.1973), cert. denied 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973); Rotolo v. United States, 404 F.2d 316 (5th Cir.1968); United States v. Viale, 312 F.2d 595 (2d Cir.1963), cert. denied 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963). The only cases to find reversible error are easily distinguished. In Winebrenner v. United States, 147 F.2d 322 (8th Cir.1945), cert. denied 325 U.S. 863, 65 S.Ct. 1197, 89 L.Ed. 1983 (1945), the trial court actually gave an incorrect admonition to the jury before recess. In United States v. Williams, 635 F.2d 744 (8th Cir. 1980), the trial court failed to give an instruction either at the outset of trial or before the evening recess, when jurors were able to go home.
In the instant case the trial court gave a correct and thorough instruction at the outset of trial. We will not indulge the groundless supposition that the jurors violated sequestration while on lunch break. There is no showing of prejudice as a result of the failure to remind the jurors not to discuss the case over lunch. This assignment lacks merit.
Assignments Nos. 29 & 31.
By these assignments Hall claims the trial court erred in refusing to grant a mistrial when the prosecutor and a witness made remarks that were allegedly prejudicial to him. The first such remark was when the prosecutor asked Dep. Fields, with respect to a photograph (see Assignment No. 18, supra), whether it "[h]ad to do with where the dope was sold, didn't it?" The second remark was when Trooper Ballance was allowed to testify that he felt Hall knew Ballance's purpose in town was to buy drugs.
As for the first statement, none of the mandatory grounds of mistrial apply. LSA-C.Cr.P. art. 770. The trial court's decision to deny a motion for mistrial on the discretionary grounds, LSA-C.Cr.P. art. 771, will not be disturbed absent a manifest abuse of discretion. State v. Burdgess, supra; State v. McLeland, supra.
In reviewing the trial court's decision, we again refer to State v. Marquer, supra. There the defendants were charged with distribution of a Schedule II CDS, pentazocine. At voir dire, the prosecutor referred to it as "dope." The defense objected and moved for a mistrial. The trial court refused, and the court of appeal found no abuse of discretion. We will concede that "dope" has slang overtones and may be used pejoratively; however, it is a fairly accurate synonym for "any drug or narcotic." See Webster's New Twentieth Century Dictionary 545 (2d ed. 1983). The powder in question was ultimately proved to be a CDS. Under the circumstances we see no abuse of discretion.
As to Trooper Ballance's testimony, the state apparently intended to show that Hall considered him a drug buyer. The relevancy of this is not immediately clear, since Trooper Ballance never bought anything from Hall. However, the objection was not based on irrelevancy or on reference to other crimes; it was limited to contesting whether the answer called for information beyond the witness's knowledge. R.p.p. 800-801. We will consider the objection in this light.
Generally a witness may testify only to facts within his knowledge, and not as to any recital of facts heard by him, or as to any impression or opinion he may have. LSA-R.S. 15:463 (now repealed); LSA-C.Ev. art. 602; State v. Kahey, supra; State v. Haynes, 514 So.2d 1206 (La.App. 2d Cir.1987). However, lay witnesses may testify as to their inferences drawn from their personal experiences. State v. Vanderhoff, 415 So.2d 190 (La.1982); State v. Haynes, supra. Trooper Ballance testified that he had spent over eleven years investigating drug cases. This strikes us as an adequate foundation for testifying that, as far as he could tell, a suspected drug seller may have been regarding him as a potential drug buyer.
*390 These assignments do not present reversible error.
Assignment No. 37.
By this assignment Hall claims the trial court erred in allowing the state, in its closing argument, to refer to matters not in evidence. The defense in closing had attempted to cast doubt on the credibility of Dep. Fields, the state's key witness. In rebuttal, the state tried to offset the argument; the prosecutor stated that for a number of years, in every case he tried, he had to defend the actions of the police department. R.p. 860.
Argument shall be confined to the evidence admitted, the lack of evidence, to conclusions of fact that may be drawn therefrom, and the applicable law. The state's rebuttal shall be confined to answering the defendant's argument. LSA-C.Cr.P. art. 774. Generally, a resort to personal experience is beyond the proper scope of argument, but in order to reverse a case, the reviewing court must be thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Barrow, 410 So.2d 1070 (La. 1982), cert. denied 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982); State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied 522 So.2d 1092 (La.1988). The state is granted latitude in rebuttal to refute the defense's argument. State v. Morris, 404 So.2d 1186 (La.1981); State v. Burns, 504 So.2d 124 (La.App. 2d Cir.1987), writ denied 505 So.2d 1142 (La.1987). Even an otherwise improper argument will not amount to reversible error if it is required to answer a specific defense argument and does not unduly influence the jury. See State v. Clouatre, 482 So.2d 106 (La.App. 4th Cir. 1986); State v. Robertson, 480 So.2d 410 (La.App. 4th Cir.1985); State v. Bullock, 476 So.2d 1008 (La.App. 3d Cir.1985), writ denied 481 So.2d 628 (La.1986). An admonishment by the court will generally cure the alleged error. State v. Bonanno, 373 So.2d 1284 (La.1979); State v. Taylor, 525 So.2d 1118 (La.App. 5th Cir.1988), writ denied 536 So.2d 1212 (La.1989).
We will concede that the prosecutor's remarks were beyond the evidence. However, the defense had leveled several accusations against Dep. Fields's credibility and the state was entitled to answer them. The thrust of the comment was that the prosecutor frequently had to rehabilitate police officers. This does not strike us as prejudicial. Moreover, the jury was repeatedly warned that the arguments of counsel are not evidence (by our count, the court said this four times). When the court overruled the instant objection, it stated, "This ... this is argument." R.p. 860. The prosecutor himself stated at least five times that his argument was not evidence. Considering the need to answer the defendant's argument and the numerous admonitions, the argument complained of was not prejudicial and this assignment does not present reversible error.

V. Assignments pertaining to discovery
Assignments Nos. 26 & 28.
By these assignments Hall claims the trial court erred in refusing to grant a mistrial when the state failed to provide certain discoverable matters.
The first issue is whether the trial court erred in refusing to grant a mistrial when it was discovered during the proceedings that the entire initial report, though requested in discovery, was not provided to defense counsel. The state did provide a one-page police report for each of the drug transactions in question, but Dep. Fields testified on cross-examination that each report may have included a second page, which consisted of his narrative account of the sale, and was obviously not provided. R.p.p. 687 et seq. An initial police report is subject to discovery. LSA-R.S. 44:3 A(4); State v. Shropshire, 471 So.2d 707 (La. 1985). The reporting officer may not defeat the intent of the statute by selectively including information in the initial report and placing the rest in a subsequent report. State v. McEwen, 504 So.2d 817 (La.1987). The initial report should include all information obtained in the initial investigation of the complaint. State v. McEwen, supra.
Dep. Fields testified that, as far as he knew, the two-page report constituted the entire initial report. The trial court found *391 that Page 2 was not part of the initial report, as it was merely a "narrative" of what took place. R.p. 702. This finding is clearly wrong, as R.S. 44:3 A(4)(b)(i) specifically states that the initial report is to contain a narrative description of the alleged offense.
The failure to comply with discovery, however, does not automatically mandate reversal. If the state's failure to comply misleads the defense as to the strength of the state's case, then the resultant prejudice may constitute reversible error. State v. Ray, 423 So.2d 1116 (La.1982); State v. Booth, 448 So.2d 1363 (La.App. 2d Cir. 1984). Prejudice may result from withholding evidence that is "surprising" and damaging, without which the defense was lulled into misapprehension of the state's case. State v. London, 478 So.2d 1340 (La.App. 5th Cir.1985). The reviewing court must determine whether there was prejudice which may have led the trial court to reach the wrong conclusion. State v. Ray, supra; State v. Booth, supra.
The one-page reports which the state provided are included in the record at R.p.p. 78-81. The second pages are not included. The first pages set out the basic facts: location, date and time, name of officers who witnessed the transaction, the fact that suspected cocaine had been seized, and a brief synopsis of the transaction. For comparison, second pages of initial reports from other cases arising from this "sting" (including State v. Tony Charles Lewis) were offered as exhibits. In each instance, the second page narrative contains essentially the same information as is condensed in the first page report. The narrative gives more small details, but the first page provides all the necessary facts on which the state based its case. We realize that the narrative pages involved in the instant case are not available for precise comparison, and we certainly do not approve of this sort of police paperwork. However, comparison with the discovery materials in State v. Tony Charles Lewis, and Dep. Fields's testimony that the first page was merely his initial narrative "typed up" by Dep. Davies, R.p. 695, suggests very little discrepancy between the first and second pages. Moreover, the state made Dep. Fields available to the defense for questioning. R.p. 76. Under the circumstances it is difficult to see how Hall was prejudiced by the failure to provide the narrative or second page. We do not find that this assignment presents reversible error.
The second issue is whether the trial court erred in failing to grant a mistrial when it was discovered during trial testimony that a confidential reliable informant (CI) named Robert Rachal had been used but this fact was not disclosed. On cross-examination Dep. Fields stated that someone named Robert Rachal was with him during the drug transactions on February 11 and 13. Dep. Fields explained that Rachal was an informant who was familiar with Winn Parish and could point out drug dealers. Dep. Fields added that Rachal was a CI who was paid for his services. R.p.p. 668-671. Based on this information and the fact that the state did not disclose Rachal's existence prior to trial, the defense moved for a mistrial.
Louisiana has a strong public policy in favor of protecting the identity of CIs. State v. Davis, 411 So.2d 434 (La.1982). The defendant bears the burden of showing exceptional circumstances which would require divulging a CI's identity; the trial court has much discretion in deciding whether disclosure is warranted. State v. Oliver, 430 So.2d 650 (La.1983), cert. denied 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Babbitt, 363 So.2d 690 (La.1978).
We have carefully analyzed the cases dealing with disclosure of the CI's identity. In State v. Davis, supra, a CI introduced the defendant to an undercover officer and was present on three occasions when there was an illegal drug transaction. The supreme court held that the trial court did not abuse its discretion in determining that disclosure of the CI's identity was not warranted. The supreme court noted the CI did not play a crucial role in the criminal transaction, and found the defendant did not carry his burden of demonstrating exceptional circumstances to require disclosure. *392 In State v. White, 508 So.2d 982 (La.App. 3d Cir.1987), writ denied 512 So.2d 1184 (La.1987), a CI introduced the defendant to law enforcement officers, rode with the defendant and an officer to get marijuana, and was present at the illegal sale. The third circuit upheld the trial court's refusal to compel disclosure of the CI's identity. See also State v. Williams, 347 So.2d 184 (La.1977); State v. Reed, 499 So.2d 132 (La.App. 2d Cir.1986); State v. Clouatre, supra. In general, these cases hold that a CI who does not play a material part in the transaction is not subject to disclosure.
In light of this jurisprudence, Robert Rachal's identity would not have been subject to disclosure. He appears to have played less of a role than the CI in either State v. Davis or State v. White, supra. He rode around with Dep. Fields and pointed out suspected drug dealers. He was present at two transactions. There is no indication that he actually introduced Dep. Fields to Hall, or played an active role in the cocaine sales. Disclosure of his identity was not required.
Dep. Fields nevertheless did reveal Rachal's identity in the course of his testimony. This does not, however, really alter the situation. If this information was not discoverable, then an untimely and inadvertent disclosure would not appear to prejudice the defendant. Because Rachal was not actively involved in the sales, the state was able to present its case without his testimony. The defense apparently assumes that if it had known about him, it might have called him to contradict Dep. Fields, who was the only witness to the sales on February 11 and 13. Yet the defense was not entitled to discover his identity in the first place and therefore could not have called him. Prejudice did not result from these circumstances. These assignments do not present reversible error.

VI. Assignments pertaining to official reports
Assignment No. 32.
By this assignment Hall claims the trial court erred in allowing the report from the Crime Lab (S-21) to be introduced into evidence. The report was prepared by criminalist Linda Armstrong and detailed her findings as to S-1, the substance Hall allegedly sold on August 14, 1986. The defense claims that since Ms. Armstrong testified to her findings, S-21 was not the best evidence and constituted hearsay.
The Crime Lab report was introduced pursuant to LSA-R.S. 15:499-15:501. The defense did not object to the applicability of these statutory provisions. Under § 500, a certificate prepared in accord with § 499 shall be admissible. It is therefore an exception to the hearsay rule. See LSA-C.Ev. art. 803(8), and official comment. This report complies with the statute and is admissible.
The best evidence rule, LSA-R.S. 15:436 (now repealed) does not preclude introducing demonstrative evidence to corroborate a witness's testimony. State v. Hollingsworth, 337 So.2d 461 (La.1976); State v. Collins, 470 So.2d 553 (La.App. 1st Cir.1985).
Finally, Hall was acquitted on the charge for which S-21 was offered. No prejudice resulted. This assignment is meritless.
Assignments Nos. 33, 34, 35 & 36.
By these assignments Hall claims the trial court erred in admitting various items into evidence. He first complains about S-22, 23 and 24, to which he objected on the basis of hearsay, not best evidence or lack of notice. These are the Crime Lab reports on the other three cocaine samples. The same rationale applies to these as applied to S-21, discussed in Assignment No. 32, supra. The objections of hearsay and best evidence are meritless. Notice of the state's intent to use the reports was given on August 11, 1987, at R.p. 41.
The remaining items are the evidence bags taken in each transaction and containing cocaine. The defense claims the state did not lay a proper foundation and chain of evidence. To admit demonstrative evidence at trial, the law requires that the *393 object be identified. Identification can be visual, that is, by testimony that the object exhibited is the one related to the case; and it can be by chain of custody. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Drew, 360 So.2d 500 (La.1978), app. dism. 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. The state need only establish by a preponderance of evidence that the object is the one connected with the case. State v. Sweeney, supra; State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972).
We have carefully examined the chain of custody for each item. For example, S-8 is the evidence bag from the February 11 sale. Dep. Fields testified that he purchased this from Hall at 4:20 p.m. on February 11, wrapped it in paper and placed it in the glove compartment of his car. Dep. Fields gave it to Dep. Davies and Trooper Martin at 5:16 p.m. the same day. Dep. Davies corroborated this. He labeled it, placed it in an evidence bag, carried it to the Winn Parish Sheriff's Office and locked it in his evidence locker. On March 9, 1987 at 10:00 a.m., Dep. Davies took it to the Crime Lab and turned it over to T.J. Shuflin. Mr. Shuflin corroborated that he received it from Dep. Davies and Trooper Martin at this time. He assigned it a Crime Lab number, labeled it, analyzed it and locked it in the evidence locker. He transferred it back to Dep. Davies on July 17, 1987. Dep. Davies testified that he received it from Mr. Shuflin at that time, and then kept it in his evidence locker until turning it over to the district attorney on the morning of trial. This appears to be a proper chain of custody. The foundation was properly laid and the trial court did not err in admitting S-8.
We have examined the chains of evidence for the remaining items, S-1 (from the August 14, 1986 sale), S-9 (from the February 13, 1987 sale) and S-10 (from the April 3, 1987 sale). Each of these chains is of the same quality as outlined for S-8. See R.p.p. 653-659 (Dep. Fields's testimony), R.p.p. 762-765 (Dep. Davies's testimony), and R.p.p. 821-824 (T.J. Shuflin's testimony). State v. Sweeney, supra. These assignments are without merit.

VII. Post verdict motions
Assignment No. 38.
By this assignment Hall claims the trial court erred in denying his motion for post verdict judgment of acquittal, based on LSA-C.Cr.P. art. 821 (incorrectly cited in brief as art. 851). He contends the state failed to prove every element of the offenses on which he was convicted, and that rulings on the various written motions and objections at trial showed prejudicial error. The latter argument is more properly addressed to the motion for new trial, LSA-C. Cr.P. art. 851. It may nevertheless be disposed of by noting that we have found no ruling on any motion or objection that has resulted in prejudicial error.
The first argument is sufficiency of evidence. The standard of review is whether, viewing the evidence in light most favorable to the prosecution, any rational finder of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. LSA-C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the charged offense, distribution of cocaine, the state had to prove that Hall knowingly or intentionally distributed or dispensed a CDS classified in Schedule II, namely cocaine. Dep. Fields testified that Hall sold him, on the various occasions, the powder which was later identified as cocaine by qualified Crime Lab personnel. As there was no evidence to contradict Dep. Fields or the Crime Lab personnel, a rational jury could have believed them and found Hall guilty. Cocaine is by definition a Schedule II CDS. LSA-R.S. 40:964 (Sched. II) A(4).
Here the defense brief is slim on discussion and authority. However, it could be construed to assert that Dep. Fields's credibility was shattered by effective cross-examination, and that if the jury disbelieved him as to Count One, then it had no rational basis to believe him as to the others. This court, however, is not a trier of fact; *394 we will not disturb a reasonable credibility call. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dism. 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984). Even if the acquittal on one count is construed as an inconsistent verdict, it is not grounds for upsetting the entire verdict. Our legal system extends to juries the deference to return verdicts apparently based on compromise or even leniency. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); United States v. Lichenstein, 610 F.2d 1272 (5th Cir.1980), cert. denied sub nom. Bella v. United States, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1981); State v. Stewart, 400 So.2d 633 (La.1981), habeas corpus denied sub nom. Stewart v. Blackburn, 746 F.2d 262 (5th Cir.1984), cert. denied 470 U.S. 1030, 105 S.Ct. 1401, 84 L.Ed.2d 788 (1985).
This assignment does not present reversible error.
Assignments Nos. 39 & 40.
By these assignments Hall claims the trial court erred in denying his motion and supplemental motion for a new trial, LSA-C.Cr.P. art. 851(3). In brief he has abandoned his other grounds for new trial and argues only that the identity and potential testimony of Robert Rachal was new and material evidence which, despite the exercise of reasonable diligence by the defense, was not discovered before or during trial, is now available, and if introduced at trial would probably have changed the verdict of guilty. At argument of the supplemental motion on April 4, 1988, the defense offered no evidence. R.p. 27.
A motion for new trial based on newly discovered evidence must satisfy four requirements: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence timely was not due to lack of diligence; (3) it must be material to the issues of the trial; and (4) it must be of such a nature that it would probably produce an acquittal in the event of a retrial. State v. Prudholm, 446 So.2d 729 (La.1984). The defendant bears the burden of proof and the trial court's decision will be disturbed only in the event of a clear abuse of discretion. State v. Humphrey, 445 So.2d 1155 (La.1984); State v. Motton, 395 So.2d 1337 (La.1981), cert. denied 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981).
The evidence shows that the existence of the CI was not discovered after trial. The defense may have known about Robert Rachal before trial, as Mr. Culpepper apparently tried to subpoena him as a defense witness during trial, but there was no return. R.p.p. 635, 636. If the defense only learned about Robert Rachal during Dep. Fields's testimony, then this was during trial. The defense's options in such a situation are outlined in State v. Collins, 540 So.2d 1046 (La.App. 2d Cir.1989), and citations therein, but motion for new trial is not among them.
Moreover, if the defense was planning to call Robert Rachal, it presumably knew how he would testify. In brief the defense states that it believes Rachal's testimony would contradict Dep. Fields factually and damage his credibility. However, the defense made no effort to substantiate this; it offered no evidence at the hearing on the motion. New trial is not warranted on the basis of purely speculative testimony. State v. Provost, 352 So.2d 661 (La.1977).
We perceive no abuse of discretion in the denial of these motions for new trial. These assignments do not present reversible error.
Errors patent.
We have examined the record for errors patent, pursuant to LSA-C.Cr.P. art. 920(2), and find none.

VIII. Conclusion
For the reasons expressed, Wiley Hall's conviction and sentence are affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, FRED W. JONES and LINDSAY, JJ.
Rehearing denied.