309 So.2d 129 (1975)
STATE of Louisiana, Appellee,
v.
Daniel J. SANTOS, Appellant.
No. 55477.
Supreme Court of Louisiana.
February 24, 1975.
*130 Barry F. Viosca, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of possession of cocaine with intent to distribute it, La.R.S. 40:971(A)(1) (as enacted by Act 457 of 1970), and sentenced to fifteen years at hard labor. He appeals, relying chiefly upon four bills of exceptions.
Motion to Suppress
The most serious contention is raised by the bill taken to the denial of the defendant's motion to suppress the narcotics as evidence. The defendant Santos contends that the narcotics which he is charged with possessing could not be used in evidence against him because seized as the result of an unconstitutional search.
The cocaine was seized from a refrigerator in the first-floor apartment of Walgamette, originally a co-defendant. (Before the defendant's trial, the latter pleaded guilty to the offense.) Santos was alone in the apartment at the time of the seizure. Although Walgamette testified that the cocaine belonged to him alone, the State's theory was that Santos was in constructive possession of it as jointly involved in the sale of cocaine.
*131 The police had no warrant for the search of Walgamette's apartment or for the arrest of Santos. The justification urged for the search is that a police officer, lawfully in an alleyway outside the apartment window, saw Santos placing the cocaine in the refrigerator. Other evidence shows that cocaine may easily be disposed of (by flushing or otherwise dissolving in water down the drain) when a suspect is alerted to an imminent police search; so, therefore under such circumstances, there may be insufficient time to obtain a search warrant.
The evidence also shows that the observing police officer had probable cause to believe that the defendant had hidden cocaine or other illegal drug in the refrigerator:
Based on information from a confidential informant, the witness and two other police officers had earlier observed Santos and Walgamette meet two potential customers. The officers had then overheard a discussion of the purchase of cocaine. The officers had then followed Santos and Walgamette, as they returned by vehicle to Walgamette's apartment.
Shortly afterwards, Walgamette and a girl companion came out of the house and drove away. They were followed by two officers. One officer remained, keeping the apartment under surveillance.
About a block from the home, Walgamette recognized one of the officers. The officers immediately stopped the vehicle and arrested Walgamette (who had no driver's license on his person). They found cocaine on his person.
During this time, Santos was seen by the officers standing in front of the house observing the arrest. Santos rushed inside the house as the officers returned to it. An officer in the alleyway outside (on his way to the back door, as a routine police precaution) saw Santos in the front room of the apartment through its open window.
According to the officer, he saw Santos stuffing several small plastic (later found to be 10) bags, each containing a small quantity (later found to be an ounce) of a white powdery substance into a brown paper bag. To his experienced observation, he had reason to believe it was cocaine or heroin or some illegal drug.
The officer saw Santos run to the refrigerator, place the bag within, and then return quickly to the cot. The other officers then came through the door, which had been opened for them with her key by Walgamette's girl companion (who had spent the night in the apartment).
Under this version of the police officers (found credible by the trial court), there was probable cause to search the refrigerator, while the exigent circumstances justified making the search immediately without taking time to obtain the otherwise necessary search warrant.
The defendant questions the veracity of the police officers and insists that the policeman in the alleyway could not reasonably have observed what he said he did. Nevertheless, we are unable to say that the trial court's factual determination was so clearly erroneous as to justify disturbing it on appeal. The versions of the police officers are not so completely improbable as to justify our substitution of our evaluation of these police witnesses' credibility for that made by the trial court, to which great weight must be given. Also, despite the contention to the contrary, the evidence shows that the policeman was lawfully in the alleyway outside the room at the time he made his observation.
We therefore do not find reversible merit to this bill.
Other Bills
The other bills taken to the trial court rulings likewise do not present error:
Bill No. 2: The defendant complains that the police witnesses were not required to disclose the name of a confidential *132 informant. The information received from him caused the police to be eyewitnesses at the initial meeting between the potential customers and Santos and Walgamette. However, there is no showing that disclosure of the informant's identity was essential for the defendant's defense on the merits or for his grounds for the motion to suppress. State v. Thorson, 302 So.2d 578 (La.1974); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). The objection was not at the trial grounded on the reason the conviction was reversed in Favre v. Henderson, 464 F.2d 359 (CA5, 1972), first argued on appeal, nor is any such prejudice here shown.
Bill No. 3: The bill of information is not fatally defective for failing to allege guilty knowledgethe charge that the accused willfully and unlawfully had cocaine (a controlled dangerous substance) in his possession, with the intent to distribute it, is sufficient. See State v. Scott, 278 So.2d 121, also 127 (concurring opinion) (La.1973). Further, the alleged technical defect was first raised by motion in arrest of judgment, after the verdict; thus, in the absence of unusual circumstances not here found, it cannot be used to nullify the trial jury's verdict. See State v. Mason, 305 So.2d 523 (La.1974) (decided December 2, 1974) and State v. James, 305 So.2d 514 (La.1974) (decided December 2, 1974).
Bill No. 4: As the trial court's per curiam correctly shows, the two new witnesses (as to an issue fairly disclosed and decided at the motion to suppress and at the trial of the merits) were not shown to meet the requirements of law for granting a new trial by reason of newly discovered evidence. La.C.Cr.P. arts. 851(3) and 854.
Final Contention: In this court, the appellant contends that he was denied due process by the inordinate length of time it took for the trial record to be prepared and sent to this court, nearly three years. This is alleged to be an error patent on the face of the record.
However, we are cited to no law by reason of which the defendant's conviction, following his speedy trial, should be reversed for such reason, when otherwise affirmable.
This is not to justify the inexcusable delay in processing this appealsimply to state that the remedy is not reversal, but instead is resort to the supervisory jurisdiction of the trial court and of this court to hasten the preparation of the record.

Decree
For the reasons stated, we affirm the conviction and sentence.
Affirmed.
BARHAM, J., concurs.