614 So.2d 862 (1993)
STATE of Louisiana, Appellee,
v.
Jerry WILEY, Appellant.
No. 24,551-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1993.
*865 Bobby L. Culpepper, Jonesboro, for appellant.
Richard P. Ieyoub, Atty. Gen., Walter E. May, Dist. Atty., Douglas L. Stokes, Jr., Asst. Dist. Atty., for appellee.
Before SEXTON, BROWN and STEWART, JJ.
STEWART, Judge.
Defendant, Jerry Wiley, was charged with and found guilty of distribution of cocaine in violation of LSA-R.S. 40:967(A). He was subsequently sentenced, as a habitual offender, to serve fifteen years at hard labor and to pay a $10,000 fine. The defendant has appealed his conviction and sentence asserting 32 assignments of error. We affirm.

FACTS
On June 22, 1991, during an undercover operation, Officers John Jackson and Betty Pichon, along with a confidential informant (CI) later identified as Casket Bradford, made a drug buy from John Henry Sims, also known as "Buggie." The undercover agents and the CI first met with Buggie in the parking lot of Fred's Place on Leon Drive. The CI informed Buggie that they were looking for some smokes. Buggie said he had some but that they would have to take him to "Poochie's" house first. "Poochie" was later discovered to be the defendant, Jerry Wiley.
The agents drove Buggie to Poochie's house where Buggie told the others to make the block and pick him back up. He said he saw Poochie's truck at the house and reasoned that he must be home. The agents drove around the block then returned to pick up Buggie. Buggie told them that they would have to go to the project on Wilson Street. This they did.
Once there, because it was too hot to stay in the car, the two agents, the CI, and Buggie got out of the vehicle and sat on a rail that bordered the parking area. A few minutes later, a white Chevrolet pickup truck drove up and stopped not far from where the four were sitting. Buggie went to the truck on the passenger's side. The door was open and he reached in and was handed something in his right hand by the driver of the truck. Buggie walked back over to the two agents and CI and opened his right hand which contained three whitish stoney rocks. He said that they could have these rocks for $35. Officer Jackson gave Buggie $35. Buggie took the money and handed it to the driver of the truck. The door of the truck had remained open during the transaction. Officers Jackson and Pichon later identified the driver of the pickup as Jerry Wiley, the defendant.
The undercover operation wrapped up about six months later. Based upon the transaction of June 22, 1991, both John Henry Sims (Buggie) and Jerry Wiley (Poochie) were arrested and jointly charged by bill of information with distribution of cocaine. When Sims pled guilty to the charge one week before trial, he indicated that Wiley had not been involved in the transaction.
During Wiley's trial by jury, Sims testified that the transaction had occurred at the house of Casket Bradford's sister and that Wiley had not been involved.
Following the trial, Wiley was convicted on the charge of distribution of cocaine. He filed a motion for a new trial which was denied after a hearing on April 4, 1992. On April 8, 1992, he was sentenced as a habitual *866 offender to serve 15 years at hard labor and to pay a $10,000 fine. Wiley appeals his conviction and sentence. Finding no reversible error, we affirm.

ASSIGNMENTS OF ERROR
Defendant, Jerry Wiley, asserts 32 assignments of error. Assignments 3, 6 and 11 were not briefed and are therefore deemed abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La. App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). We therefore address only the remaining 29 assignments.

Motion to Quash (Assignment of Error No. 32)
Defendant complains that the trial court's denial of his motion to quash the bill of information was error because the bill did not state the name of the cocaine purchaser.
The Louisiana Supreme Court held in State v. Martin, 310 So.2d 544 (La.1975), that it was unnecessary to allege the name of the buyer of a controlled substance when a charge of distribution is made. This information is available through a bill of particulars. The defendant filed a request for a bill of particulars. In it, he does not request the name of the person to whom the cocaine was sold but does specifically ask about undercover agents. The defendant had ample opportunity through the bill of particulars to inquire about the purchaser of the cocaine, but he failed to do so. Our review of the bill of information reveals that it is in proper form and that the motion was correctly denied. For these reasons, this assignment of error is without merit.

Juror Challenges (Assignments of Error Nos. 1 & 2)
Defendant contends that the district court erred in granting three of the state's challenges for cause and in denying one of defendant's challenges for cause.
The trial court is vested with broad discretion in ruling on a challenge for cause and its ruling will not be disturbed on appeal absent a showing of an abuse of discretion. The trial court's ruling will be reversed only when an arbitrary or unreasonable exercise of this discretion results in prejudice to the accused. State v. Widenhouse, 582 So.2d 1374, 1381 (La. App. 2d Cir.1991), writ denied, 586 So.2d 567 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992).
The state issued a challenge for cause regarding Mrs. Henderson and Mrs. Wimberly as jurors because each stated that she had a relationship with the defendant and/or his family which would influence her decision if she served as a juror. The state challenged these two jurors for cause. When the trial court granted the state's challenges, the defendant objected because both prospective jurors had testified that they would try to set their feelings aside if they were selected and forced to vote.
In State v. Drumgoole, 517 So.2d 909 (La.App. 3d Cir.1987), a challenge for cause based upon a relationship with the accused's family was found to have been properly granted. Although the potential juror stated that she would vote if she had to, she also stated it would be hard for her to be impartial. Likewise, although the instant potential jurors stated that they would attempt to set aside their bias if forced to, both stated that it would be hard to do so because they felt influenced by their relationship with the defendant. Under these circumstances, the trial court did not err in excusing Henderson and Wimberly for cause.
Defendant also contends that the trial court erroneously granted the state's challenge for cause as to prospective juror Mrs. Stewart. Mrs. Stewart indicated that her religious beliefs were such that one person is not to judge another person. She told defense counsel that if she were selected as a juror, when the time came to vote guilty or not guilty after jury deliberation, she would vote. However, when the trial court subsequently asked whether she could render a judgment as to whether this *867 defendant violated the law, she answered that she did not think that she could.
In State v. Brown, 479 So.2d 464 (La. App. 1st Cir.1985), the trial court excused for cause a prospective juror who stated that she was reluctant to sit in judgment of others due to her religious beliefs, but if forced, she could possibly render a judgment. Although her responses were not entirely consistent, the cumulative import of her testimony showed an inability to render a verdict according to the law. The trial court's ruling was upheld. The instant case is similar in that Mrs. Stewart's cumulative responses, although at times inconsistent, convinced the trial court that she would be unable to render an impartial verdict. The trial court did not abuse its discretion in maintaining the challenge for cause of Mrs. Stewart. This assignment of error lacks merit.
Defendant's second assignment of error asserts that the trial court erred in failing to sustain defendant's challenge for cause to prospective juror Woods.
When first questioned by the defense, Ms. Woods stated that the defendant's failure to testify could possibly affect her vote. When the defense challenged Ms. Woods, the trial court explained to her that a defendant has a right to remain silent and that the assertion of this right could not be held against a defendant. Ms. Woods stated that she appreciated that option and that she would not hold the failure to testify against the defendant but that she would wonder why he did not testify. She told the trial court that her "wondering" would not affect her decision as to the guilt or innocence of the defendant. She also indicated that she would make her decision based strictly upon her own assessment of the defendant's guilt or innocence. Defendant asserts that Ms. Woods' statement that she would wonder why the defendant did not testify if he failed to do so, indicated that she would doubt the defendant's innocence and that the challenge for cause should have been granted.
A charge of bias may be removed by rehabilitation of a prospective juror. State v. Mills, 505 So.2d 933, 944 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La. 1987). If a prospective juror is able, after examination by defense counsel, to declare to the court's reasonable satisfaction that he could render an impartial verdict according to the law and the evidence, it is the trial court's duty to deny a challenge for cause. Widenhouse, supra, 582 So.2d at 1382.
Although Ms. Woods initially stated that she would be influenced by the defendant's failure to testify, she later stated that she would not hold this against him. The trial court concluded from Ms. Woods' responses that she could render an impartial verdict. We find no error in this conclusion and therefore no merit in this assignment.

Hearsay Statements of Buggie
(Assignments of Error Nos. 7, 8, 9, & 14)
Defense counsel objected to testimony from the two undercover agents, Officers John F. Jackson and Betty Pichon, as to what John Henry Sims (Buggie) said to them and to the confidential informant about getting some cocaine for them. The state argued that this testimony was part of the res gestae and was offered to explain the sequence of events which led up to the purchase of cocaine.
In State v. Wille, 559 So.2d 1321 (La. 1990), the Louisiana Supreme Court discussed the basis of the hearsay exclusion as follows:
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, when the statement is being offered as an assertion to show the truth of matters asserted therein and thus rests for its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978); La.C.Evid. art. 801(C). One of the primary justifications for the exclusion of hearsay is that the adversary has no opportunity to cross-examine the absent declarant to test the accuracy and completeness of the testimony. The declarant is also not under oath at the time of the statement. Moreover, the confrontation clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused *868 shall enjoy the right ... to be confronted with the witnesses against him". U.S. Const. amend. VI. There is no opportunity for confrontation when an assertion by one party is presented through the testimony of another party.
The relationship between the confrontation clause and hearsay evidence was discussed in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The Court recognized that the reasons for excluding hearsay assertions were (1) to insure that the witness will make his assertions under oath, thus impressing him with the seriousness of the matter and subjecting untrue statements to a penalty for perjury; (2) to force the witness to submit to cross-examination, characterized as the "greatest legal engine ever invented for the discovery of truth"; (3) to permit the jury which decides the defendant's fate to observe the demeanor of the witness in making his statements, thus aiding the jury in assessing the witness' credibility. Id. at 158, 90 S.Ct. at 1935.
A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. This testimony is not hearsay if it is not admitted to prove the truth of the assertions, but merely to explain the events leading to the arrest of the defendant. State v. McNair, 597 So.2d 1096 (La.App. 2d Cir.1992); State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). However, information received by a police officer during an investigation frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect. See Wille and McNair, both supra. Whether the out-of-court assertions connect the defendant with the crime is a significant factor to be considered in determining the admissibility of such statements. See Wille, supra, at 1330.
The erroneous admission of such hearsay and irrelevant evidence does not require reversal unless there is a reasonable possibility that the evidence might have contributed to the verdict. Wille, supra, 559 So.2d at 1332.
The statements complained of were as follows:
Q. What, if anything, did Buggie say?
A. Buggie stated that he had, he can get us some rocks.
Q. Okay. Did he indicate anything about the price or quality?
A. Uh, no sir.
Q. Okay. Did he say anything else?
A. He said, but we, either we can go or he can take us to get it at Puchie's house.
....
Q. What happened when you got to that intersection?
A. Buggie then stated that, he stated there is the barber shop and there is the trailer house which Pukie stayed at, Puchie.
Q. Okay. Did he indicate that you should do anything else or say anything else?
A. He advised me that his truck was home and to uh, drop, let him off at the corner so he can go see if Puchie got anything.
Q. When that statement was made to you, what, if anything, did ya'll do?
A. Well we made a block.
....
Q. Okay. After you made the block, what happened next?
A. We met back with Buggie at the corner, which then he got back into the vehicle and advised us to go park in the projects, which was on
Q. What, if anything, did you do after he advised you of that?
A. Then we drove to the project area, which was located on Wilson Street here in uh, Jonesboro.
Q. And that was here in Jackson Parish?
A. Yes sir.
Q. Okay. And what, if anything, happened after you drove to the Wilson Street area?

*869 A. He advised us then that Puchie, Puchie will be on his way, would meet us here. So we got out of the vehicle and we waited by the bar, by the uh, rails.
The state's position that these statements are nonhearsay is persuasive because, in describing the sequence of events, the value of these statements does not rest upon the credibility of the out-of-court assertions. However, we are more persuaded by the fact that Buggie (John Henry Sims) testified in defendant's case in chief and was fully questioned both on direct and cross examination. For this reason, defendant's right to confrontation was not violated by admission of these statements.
It is also significant that Buggie's statements, alone, did not directly implicate defendant (Poochie) in the drug transaction. After going to Poochie's house, Buggie did not get back into the car and say that Poochie had the cocaine. Instead he instructed them to go to the projects. Buggie's statement that Poochie would meet them later does not, itself, implicate defendant in the transaction. Defendant's appearance and actions at the transaction show that he was involved, but the statement alone does not.
Considering the eyewitness testimony of the agents as to the identity of the person delivering the drugs, we do not find it a reasonable possibility that this testimony contributed to the verdict. Absent defendant's presence at the crime scene, the statements did not show that the defendant was involved in the charged offense. For these reasons, we find no reversible error in the admission of these statements.

Physical Evidence
(Assignments of Error Nos. 4, 15, 16, 17, & 18)
Defendant contends in assignment 4 that the trial court erred in allowing the introduction of the report from the crime lab because he had requested a subpoena for the analyst and the analyst did not testify at trial.
LSA-R.S. 15:501 states:
A. The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than ten days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.
B. (1) The party against whom such certificate is offered shall be permitted to subpoena on cross-examination, the person who performed the examination or analysis of the evidence. If the subpoena is requested at least five days prior to the commencement of trial or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody.
(2) When the attorney for the defendant, or the defendant acting in his own defense, requests that a subpoena issue to the person who performed the examination or analysis, the request shall be in writing and shall contain a certification that the attorney or the defendant intends in good faith to conduct the cross-examination.
Trial began when the first prospective juror was called for examination on February 18, 1992. LSA-C.Cr.P. art. 761. Defense counsel stated that he subpoenaed Linda Armstrong, the person who prepared the report, for trial on the matter on February 14, 1992, which is only four days before trial commenced on February 18. She did not respond to the subpoena. Additionally, defense counsel conceded that he did not include the certificate as required by LSA-R.S. 15:501(B)(2) and that the state did comply with the statute's notice requirements. For these reasons, the trial court properly allowed into evidence the lab report as prima facie proof of the facts shown therein. LSA-R.S. 15:500.
Defendant asserts that the report was not an original, that there was no evidence that the form was authentic and that there was no foundation for some of the information on the form. However, upon review of the report, it is evident that it is a certified report which complies with the requirements of LSA-R.S. 15:499. This assignment of error lacks merit.
*870 In assignments 15-18, defendant asserts that the state failed to lay the proper foundation and to establish the proper chain of custody for the following exhibits: The cocaine (S-1), the evidence transfer receipt (S-2), the certified lab report (S-3), and the evidence pick-up receipt (S-4).
The lab report (S-3), as previously discussed, was properly admitted under LSA-R.S. 15:499-501. Under LSA-R.S. 15:500, a certificate prepared in accordance with LSA-R.S. 15:499 shall be admissible. State v. Hall, 549 So.2d 373 (La.App. 2d Cir. 1989), writ denied, 556 So.2d 1259 (La. 1990). The certificate was properly admitted and assignment 15 is meritless.
In assignments 16 and 18, defendant challenges the admission of the cocaine (S-1) and the two evidence transfer receipts (S-2 and S-4) based upon an improper chain of custody and a lack of foundation. The testimony as to when the cocaine was picked-up from the crime lab and what was done with it thereafter was elicited after 1 was admitted into evidence. In assignment 17, defendant asserts that it was error to allow the state to lay part of the foundation for S-1 after it had already been admitted.
For evidence to be admitted at trial, it must be identified. Identification can occur through a visual identification or through a chain of custody. State v. Hall, supra, citing State v. Sweeney, 443 So.2d 522 (La.1983); State v. Drew, 360 So.2d 500 (La.1978), appeal dism. 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979). The law only requires that it be established more probably than not that the identity of the evidence introduced is that which was associated with the crime. State v. Gordy, 380 So.2d 1347 (La.1980) and State v. Hall, supra.
The chain of custody of the cocaine was established through the following testimony of the police officers who dealt with it:
Officer Jackson testified that he saw Buggie approach the truck driven by the defendant and receive something from the defendant in his right hand, which he kept closed until he approached Jackson and opened it revealing three whitish stony rocks. Buggie had kept his hand closed and in Jackson's sight between the time he received something by the defendant and the time he opened his hand to reveal the three rocks to Officer Jackson. Buggie gave Officer Jackson the three rocks. Officer Jackson secured the rocks in an evidence envelope (S-1) which he dated and gave to Officer Pichon. Officer Pichon testified that she received S-1 from Officer Jackson, placed it in her pocket, and later gave it to Officer Paggett.
Testimony revealed that Officer Paggett took S-1 to the police station where he secured it in a safe to which only he had the combination. He later delivered S-1 to Linda Armstrong at the crime lab. Both Officer Paggett and Linda Armstrong signed the evidence transfer receipt (S-2) when the envelope was delivered to the crime lab.
Officer Paggett was called as the state's first witness. Paggett identified S-1, S-2, and S-3. He stated he had received S-1 from Officer Pichon, transferred it to the crime lab, and received S-2 to document the transfer. He later received S-3, which reports that S-1 was found to contain cocaine. Early in the trial, Paggett examined S-1 and stated that it was the same item that Officer Pichon had given to him. He also noted that the crime lab number which had been placed on S-1 was the same as the number on the S-3 report.
After S-1 was admitted into evidence, the state recalled Officer Paggett. Paggett said that after the analysis had been completed, he picked up S-1 from the crime lab and returned it to the safe, from which it was not removed again until he brought it to court. He also identified S-4 which documents the transfer of S-1 from the crime lab back to Officer Paggett.
On this record we conclude that the state established that, more probably than not, S-1 was the evidence which Officer Jackson received from defendant via Buggie and, therefore, was properly admitted into evidence. See and compare, State v. Gordy, supra. Evidence items S-2 and S-4 *871 were also properly identified and allowed into evidence. LSA-C.E. art. 901. These assignments have no merit.

Scope of Redirect Examination
(Assignments of Error Nos. 5 & 27)
Defendant challenges the trial court's ruling which allowed a question which defendant asserts was beyond the scope of cross-examination.
A witness is subject to redirect examination on matters to which he testified on cross examination and, in the discretion of the court, to matters outside the scope of the cross-examination, as long as the other party is allowed to recross as to those matters. LSA-C.E. Art. 611; See also, State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Griffin, 438 So.2d 229 (La.App. 2d Cir. 1983), writ denied, 443 So.2d 582 (La.1983); and State v. Wright, 593 So.2d 759 (La. App. 5th Cir.1992), writ denied, 599 So.2d 313 (La.1992).
Defense counsel objected to the following question by the state on redirect examination of the witness:
Q. Officer Paggett would you describe what if anything, you did with John Jackson and Betty Pichon the first day, June 21 of 1992, what did ya'll (sic) do?
The trial court overruled the objection, and the witness responded that agents John Jackson and Betty Pichon came to Jonesboro in order to become familiar with the area and with the clubs and places where a lot of drugs were being sold. Defendant did not elect to exercise his right to recross examine the witness after this ruling.
During the preceding cross-examination, defense counsel had asked the witness whether or not the two agents had been in Jonesboro on June 21, 1992. Even assuming that the state's question was outside the scope of the preceding cross-examination, the trial court has discretion to allow questions outside the scope of cross-examination. The record reveals no abuse of the trial court's discretion in allowing this testimony. This assignment of error is without merit.
In assignment 27, defendant objects to a question which the state asked Officer Paggett at the hearing on the motion for new trial. During the hearing on this motion, defendant called the confidential informant, Casket Bradford, as a witness. On redirect examination, defense counsel asked Bradford the following question: "Now I certainly didn't offer you any money to do anything, did I?" On recross examination, the state asked Bradford whether he was ever paid by Greg Paggett. The defendant objected to this question as outside the scope of redirect examination and the trial court overruled the objection. Bradford's response was that he had never been paid.
The state's question was not outside the scope of the redirect examination because defense counsel had asked Bradford about compensation. Even if it were outside the scope of redirect, the trial court had discretion to allow the question. LSA-C.E. art. 611. This assignment of error is without merit.

Repetitive Question (Assignment of Error No. 10)
Defendant objected to the following question posed by the state to Officer Jackson as being repetitive: "When you were first approached, Buggie told you that he, that he'd have to go, you'd have to go somewhere to get the cocaine?". Jackson responded "Yes sir, that's correct." Jackson had testified earlier that Buggie said he would have to get it at Poochie's house.
The trial judge has wide discretion in controlling the examination of witnesses and a ruling as to repetitiveness is to be disturbed only on a showing of abuse of discretion. State v. Lopez, 484 So.2d 217 (La.App. 4th Cir.1986). A conviction will not be reversed due to a judge's control of an examination unless there is an abuse of discretion. State v. Chapman, 410 So.2d 689 (La.1981), appeal after remand, 436 So.2d 451 (La.1983) and State v. Jenkins, 456 So.2d 174 (La.App. 2d Cir. 1984), writ denied, 460 So.2d 1043 (La. 1984).
The information that Buggie told the agents that they would have to go elsewhere *872 to get the cocaine had been previously elicited in Officer Jackson's testimony. However, defendant has not demonstrated an abuse of discretion by the trial court. This assignment of error lacks merit.

Self-Serving Testimony (Assignment of Error No. 12)
The following testimony was objected to by the defendant as being self-serving:
Q. Okay. Do you have any personal animosity or hatred or any reason to try to tell a tale or lie about Mr. Wiley?
....
A. No, sir.
The fact that evidence or testimony is self-serving affects its weight but not its admissibility. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3d Cir.1975), writ denied, 329 So.2d 458 (La.1976); W.L. Somner Co. v. Pacific-Atlantic Oil, 522 So.2d 1335 (La.App. 2d Cir.1988). Accordingly, even if this testimony were self-serving, it was admissible. This assignment of error lacks merit.

Relevancy of Agents' Subsequent Contact with Defendant
(Assignment of Error No. 13)
Defendant contends that testimony about Officer Jackson's subsequent contacts with defendant was improperly admitted because it was immaterial and irrelevant.
A trial judge's determination of the relevancy of testimony is afforded great weight and will not be disturbed absent an abuse of discretion. State v. Myers, 583 So.2d 67 (La.App. 2d Cir.1991), writ denied, 585 So.2d 576 (La.1991).
The state asked Officer Jackson if he had any contact with the defendant after the June 22, 1991 transaction. The defense objected to the question as being irrelevant and immaterial. The state explained that it was trying to show that Officer Jackson had seen the defendant on subsequent occasions and still believed that he was the same man who had been in the truck during the drug sale on June 22, 1991. The trial court allowed the witness to answer the question and the witness testified as follows:
Q. Did you see Mr. Wiley at anytime after June 22 of 1991?
A. Yes sir.
Q. Okay. Did any observation that you made after that ever change your determination of who was in the truck on June 22 of '91?
A. No sir.
Defendant argues in brief that this testimony was unduly prejudicial. The transcript shows that the witness did not mention where or how often he had seen the defendant since the date of the crime and did not describe any circumstances attendant to his contact with defendant. There is nothing in the testimony which would lead the jury to believe that the defendant was a bad man, as the defense asserts in brief. We find this ruling was not an abuse of the trial court's discretion and it resulted in no prejudice to defendant. For these reasons, the assignment of error is without merit.

Relevancy of Matters Asked at Preliminary Examination
(Assignment of Error No. 19)
Based upon an objection to relevancy, defendant asserts that the trial court erred in allowing the state to ask officer Greg Paggett whether the defense counsel had questioned him at the preliminary examination. The state argued that, in order to demonstrate that the failure to disclose the confidential informant's identity was not a trial maneuver, it was attempting to elicit information that the witness had previously been asked to reveal the identity of the confidential informant and had previously refused. In response to the state's question, Paggett simply testified that he had refused to reveal the confidential informant's identity to defense counsel during the preliminary examination.
A trial judge's determination of the relevancy of testimony is afforded great weight and will not be disturbed absent an abuse of discretion. State v. Myers, supra.
*873 Counsel also argues that the admission of this testimony was incorrect in that it caused undue prejudice towards the defendant. He does not state how this testimony was prejudicial to the defendant. We find neither an abuse of the trial court's discretion nor any prejudice to defendant resulting from admission this testimony.
Defendant further argues in brief that the testimony was hearsay. This objection was not made at trial. A new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920, 924 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987); LSA-C.Cr.P. Art. 841. This assignment of error is without merit.

Mistrial (Assignment of Error No. 20)
Defendant contends that the trial court erred in denying his motion for mistrial when the defense discovered that codefendant John Henry Sims had pled guilty on Thursday or Friday before the trial in the instant matter and had made the statement that Jerry Wiley was not involved in this drug transaction. Defendant moved for a mistrial based upon the state's failure to notify him of the plea and of Sim's statement which tended to exculpate defendant. The trial court denied the motion.
Exculpatory evidence must be provided to the defense when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Implicit in the materiality requirement is that the outcome of the proceeding would have been different if the information had been disclosed. U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The information which was not disclosed is to be evaluated with the whole record to determine whether it would have created a reasonable doubt. State v. Johnson, 426 So.2d 95 (La.1983).
In this case, the prosecution should have given this information to the defendant. However, the defendant called John Henry Sims, his original codefendant, as a witness at trial. Sims testified regarding his statement that the defendant had not been involved in the crime. The jury heard the exculpatory testimony and found defendant guilty. The defendant does not allege how the defense would have differed had he received notice from the state of Sims' statement and he does not show that he was denied a fair trial. State v. Johnson, supra. For these reasons, this assignment of error is without merit.

Defendant's Prior Conviction
(Assignments of Error Nos. 21, 22, & 23)
Defendant challenges the trial court rulings which allowed the state to question defendant about the date of his prior conviction (assignments 21 and 22) and to introduce documentation thereof (assignment 23).
LSA-C.E. Art. 609.1 states in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
....
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof and the sentence imposed is admissible....
Defendant testified and thus subjected himself to questions about his prior convictions. In fact, he testified that he had pled nolo contendere to distribution of cocaine "a year or two" earlier on direct examination. On cross-examination, the district attorney asked the defendant about the date of the prior conviction. Again the defendant stated it was one to two years earlier. The state then produced the minute entry from the nolo contendere plea to show that the date of the conviction was only eight months earlier on June 13, 1991. This was proper in that the date of a conviction is admissible under LSA-C.E. Art. 609.1. The state showed the defendant the minute entry to refresh his memory which is allowable under LSA-C.E. 612(B). The defendant appeared to have no independent recollection *874 of the date of his conviction. Assignments 21 and 22 are without merit.
With regard to assignment 23, we find that the admission of the minute entry was in error because it contained information about the defendant's conditions of probation and about a charge that was nolle prosequied by the district attorney. The Louisiana Supreme Court found that the improper admission of a conviction record, which contained this type of information, constituted harmless error. See State v. Tassin, 536 So.2d 402 (La.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989), reh. denied, 495 U.S. 924, 110 S.Ct. 1961, 109 L.Ed.2d 322 (1990). As in Tassin, the instant evidence of probation and the dismissal of a charge was not of such a magnitude that it would lead the jury to convict the defendant based upon his being a bad person. See State v. Tassin, supra. Accordingly, we find that the error was harmless and does not constitute reversible error.

Relevancy of Matters Occurring After the Offense Date
(Assignment of Error No. 24)
Defendant asserts that the trial court erred in allowing the state to question the defendant about his activities the weekend following the incident in question. The state argued that this information about defendant's activities during the weekend after the offense date was relevant to show the defendant's ability to remember events which occurred during that time period. The defendant asserts that testimony as to the defendant's recollection events occurring after the alleged offense date was irrelevant and, if relevant, unduly prejudicial.
A trial court's determination of the relevancy of testimony is afforded great weight and will not be disturbed absent an abuse of discretion. State v. Myers, supra.
The defendant asserts that the admission of this testimony would lead the jury to believe that he was lying on the stand. However, the defendant's testimony as to what he did the following weekend is very clear. He stated that he had barbecued at a friend's house on Saturday night and that he had gone to the lake on Sunday. The testimony actually showed that the defendant had a good memory of events which had occurred eight months prior to the trial and it was not prejudicial.
We find no abuse of the trial court's discretion in allowing these questions. This assignment of error is without merit.

Witness' Personal Knowledge (Assignment of Error No. 26)
Defendant contends that the trial court erred in allowing the state to ask Officer Jackson: "If John Henry Sims had come to court and he had said he never saw Poochie on that day, the June 22nd, would that be correct?" The defendant argues that Officer Jackson could have no personal knowledge of what Sims (Buggie) saw and that the evidence was hearsay.
A witness may not testify to a matter unless evidence has been introduced to support the witness' personal knowledge of the matter. LSA-C.E. Art. 602. Personal knowledge is information acquired through the use of a witness' senses. Comment, LSA-C.E. Art. 601; Hidalgo v. General Fire & Casualty Company, 254 So.2d 493 (La.App. 3d Cir.1971).
Officer Jackson had already testified that Sims was present when the defendant drove up in his pick-up truck. Jackson stated that it was Sims who went to the truck and received the cocaine from the defendant through the open passenger door. The witness had further testified that it was Sims who had taken the cash for the drugs to the defendant in the truck.
Officer Jackson had already testified that Sims was present on June 22, 1991. Jackson further testified that he saw Sims approach a truck defendant and receive something from the defendant. It was therefore within Jackson's personal knowledge that Sims and the defendant had interacted with one another on the offense date. Sims interaction with the defendant was within Officer Jackson's personal knowledge and this testimony was therefore *875 properly admitted. This assignment of error lacks merit.

Hearsay Statements During Rebuttal
(Assignment of Error No. 25)
After John Henry Sims (Buggie) had testified during defendant's case in chief, the state recalled Officer Jackson on rebuttal. Jackson stated that Buggie told them that Poochie (defendant) had just gotten burned and would only deal with people he knew. Defendant objected to this testimony as hearsay.
This statement had little probative value, except to show why Poochie went through Buggie to sell the drugs. This testimony was arguably incorrectly admitted. However, the defendant had already testified about his prior conviction before Officer Jackson testified about this statement made by Buggie. Accordingly, the statement did not give the jury any new information and therefore was not prejudicial to the defendant. Because of the direct evidence of defendant's role in the drug transaction, as well as the prior testimony about defendant's conviction, we find that the statement did not contribute to the verdict. Accordingly, any error in allowing this statement into evidence was harmless and does not warrant reversal.

Excessive Sentence
Defendant contends that the district court imposed an excessive and unconstitutional sentence in this matter.
The defendant was sentenced on April 8, 1992, to 15 years at hard labor and ordered to pay a fine of $10,000. LSA-C.Cr.P. Art. 881.1 became effective January 31, 1992, and is applicable to defendant's sentence. This article precludes the state or defendant, on appeal or review, from raising an objection to the sentence, or from urging any grounds, not raised in a motion to reconsider sentence. Because the defendant failed to move for reconsideration, he is barred from attacking his sentence on appeal. State v. Bush, 604 So.2d 1383 (La.App. 2d Cir.1992); State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992); State v. Carter, 609 So.2d 261 (La.App. 5th Cir.1992).
Although this assignment is not properly before this court, we note that defendant received the minimum sentence available to him as a second offender and he was not ordered to serve any time without benefit of probation, parole, or suspension of sentence. This assignment of error is without merit.

Motion for New Trial
(Assignments of Error Nos. 28, 29, & 30)
In assignments of error nos. 28 and 29, defendant asserts that the trial court erred in allowing admission of certain evidence during the hearing on the motion for new trial.
The state introduced into evidence a voucher for investigative expenditures signed by Casket Bradford for the amount of $265 as State A and another voucher as State B which showed disbursements of $20 and $45 which Casket Bradford had signed. The defense objected to their admission on the grounds of relevancy. The trial court stated that they would be admitted because they were probative of the veracity of Casket Bradford who had testified at the hearing on the motion for a new trial. State A was dated August, 1991, and State B was dated June 21 and 22, 1991.
Bradford had testified earlier in the hearing that he had never served as a confidential, reliable informant for the police and that he had never been paid as a confidential, reliable informant. Officer Paggett testified that Bradford had in fact been an informant for the police and had been paid for these services. We agree that these vouchers were probative on the issue of Bradford's credibility. The fact that State A is dated after June 22, 1991, is not relevant to its admissibility on this issue because Bradford was asked if he had ever been paid as a confidential informant for the police department and his response was that he had not. There is no demonstration that the trial court abused its discretion in admitting this evidence. These assignments of error are without merit.
In assignment 30, defendant asserts that the district court erred in denying his motion *876 for new trial which was based upon an allegation of newly discovered evidence.
In order for evidence to be considered newly discovered, it must not have been discoverable before or during trial by the exercise of due diligence. LSA-C.Cr.P. Arts. 851(3) and 854(1). The trial court's decision is given considerable discretion in evaluating the impact of newly discovered evidence, and its denial of a new trial will not be disturbed absent a clear abuse of discretion. State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied, 567 So.2d 93 (La.1990) citing State v. Clayton, 427 So.2d 827 (La.1982).
The test used to determine whether newly-discovered evidence warrants a new trial is whether it is of a nature that it probably would produce an acquittal at the retrial, and not whether another jury would give a different verdict. State v. Holland, supra, citing State v. Prudholm, 446 So.2d 729 (La.1984). Cumulative evidence of an issue fairly disclosed and decided at trial is usually not of the nature that would probably produce an acquittal. State v. Lavene, 343 So.2d 185 (La.1977), citing State v. Gibson, 323 So.2d 446 (La.1975) and State v. Santos, 309 So.2d 129 (La.1975).
In his motion for new trial, the defendant stated that he did not become aware of the identity of the confidential informant (Casket Bradford) until the last day of trial. He also stated that the state informed him that Bradford could not be located. He made no effort to find Bradford. The information that Bradford had been present at the drug transaction became available to defendant during the trial.
The first requirement of LSA-C.Cr.P. Art. 854(1) is that the new evidence was not discovered before or during the trial notwithstanding the exercise of reasonable diligence. The defendant did not prove that he exercised reasonable diligence in finding Bradford when he became aware that Bradford had been present at the drug sale on June 22, 1991. In its reasons for denying the motion, the trial court noted that the defendant should have sought an instanter subpoena for Bradford, as he had done for other witnesses during the course of the trial. Regardless of what the state told him about Bradford's availability, the trial court correctly found that defendant did not exercise due diligence in that he did not request that an instanter subpoena issue for Bradford.
Defense counsel relies on the case of State v. Willis, 566 So.2d 1064 (La.App. 2d Cir.1990), in which he was counsel for the defendant, for the proposition that the credibility of Bradford was a decision to be made by the jury and not the judge at the hearing on the motion for new trial. Willis does not stand for this proposition. In Willis, the judge at the hearing on the motion for new trial did not allow defense counsel to call three witnesses who had been subpoenaed for the hearing. This court held that the trial judge should have heard the testimony of the witnesses before deciding the merits of the motion. In the present case, the trial judge heard the testimony and determined that Bradford was not a credible witness and that his testimony would not have added to the search for truth in the matter.
The testimony of Casket Bradford was largely repetitive of that of John Henry Sims (Buggie). Bradford testified that the drug transaction occurred at his sister's home and that only Sims was involved. As mentioned earlier, cumulative evidence is usually not of the type that would probably have changed the verdict or judgment of guilty. State v. Lavene, supra. The trial court was in a position to make a credibility determination of Bradford's testimony at the hearing, State v. Toussaint, 502 So.2d 599 (La.App. 3d Cir.1987), and it did not find Bradford to be credible. In light of (1) defendant's failure to exercise due diligence, (2) the cumulative nature of Bradford's testimony, and (3) the testimony and other evidence which contradicted his testimony, we find no error in the trial court's denial of defendant's motion for new trial. This assignment of error is without merit.

*877 ERROR PATENT
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform defendant. This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. Art. 921. The district court is directed to give defendant written notice of the prescriptive period for applying for PCR within 10 days of the rendition of this opinion and to file defendant's receipt of such notice in the record of the proceedings. State v. Scott, 600 So.2d 756 (La.App. 2d Cir.1992).

CONCLUSION
Finding no reversible error, we affirm defendant's conviction and sentence.
AFFIRMED.
BROWN, J., concurs in the result.