STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1057


SANDRA HUNTER, INDIVIDUALLY, ET AL.

VERSUS

CHRISTUS HEALTH CENTRAL LOUISIANA, ETC.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 229736
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Elizabeth A. Pickett, Judges.


AFFIRMED.


Robert Lewis Bussey
Bussey & Lauve
P. O. Box 8778
Alexandria, LA 71306
(318) 449-1937
COUNSEL FOR THIRD PARTY/APPELLANT:
    Louisiana Patients CompensationFund

**Todd A. Townsley**
**Loretta L. Middleton**
**Townsley Law Firm**
**3102 Enterprise Blvd.**
**Lake Charles, LA 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Sandra Hunter, Individually**
      **William Hunter, Individually**

**Jeremy C. Cedars**
**Provosty, Sadler, deLaunay, Fiorenza & Sobel**
**P. O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Christus Health Central d/b/a Christus St. Francis Cabrini Hospital**

**Lee Schwalben**
**Attorney at Law**
**616 Broad St.**
**Lake Charles, LA 70601**
**(337) 494-5757**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Sandra Hunter, Individually**
      **William Hunter, Individually**

**SAUNDERS, Judge.**

This appeal arises from a medical malpractice case wherein a hospital patient sustained a sacral ulcer. The hospital stipulated to liability, and after a trial on the issue of damages, the trial court awarded the patient and her husband a total of $124,089.48. Defendants appeal, seeking a reduction of this award. For the reasons discussed herein, we find that the trial court did not abuse its discretion. Accordingly, we affirm.

FACTS AND PROCEDURAL HISTORY

On February 14, 2005, Plaintiff, Sandra Hunter (hereinafter "Hunter"), entered the hospital of Defendant, Christus Health Central Louisiana d/b/a St. Frances Cabrini Hospital (hereinafter "Cabrini"), to receive a knee arthroplasty. While still at the hospital after surgery, she developed a decubitus ulcer (otherwise known as a "bed sore") near her tailbone due to improper care. The ulcer was discovered on February 17, 2005.

On February 9, 2006, Hunter filed a medical malpractice action with the Louisiana Patient's Compensation fund (hereinafter "the PCF") against Cabrini, claiming Cabrini had fallen below the standard of care by not timely discovering a decubitus ulcer she sustained during her stay at the hospital. The Medical Review Panel found that Cabrini did not deviate from the standard of care, and the case proceeded to a bench trial on December 4, 2012. Since Defendant stipulated to malpractice liability shortly before the trial, only the issue of damages was before the trial court.

It is uncontested that Hunter sustained a decubitus ulcer with a depth of .2 centimeters while in Cabrini's care. Hunter, whom the trial court described as a credible witness in its written reasons for judgment, "described the horrible smell of the wound, how her underwear stuck to the wound and the sheets had to be

changed frequently." Hunter received several debridement procedures to treat the wound, some surgical and some enzymatic. In its written reasons for judgment, the trial court continued, "She further described how treatment that she received 'exposed her rear end' and was both painful and humiliating." Hunter was discharged on March 1, 2005, after which she continued receiving care and medical treatment for the wound.

Hunter then received treatment from Dr. Jorge Kohatsu until the wound healed, by May 24, 2005. Dr. Kohatsu testified that the wound was uncomfortable, could have made sleeping difficult, that the debridement procedure can be painful, and that he believed the wound site could create problems for Hunter in the future, as the wound-site skin is permanently damaged. Hunter testified that she does experience periodic pain from the wound site, which the trial court found to be a credible statement in its written reasons for judgment. The trial court also found Hunter "suffered tremendous humiliation and embarrassment as a result of the wound."

The trial court awarded Hunter and her husband a total of $124,089.48 for damages: $17,589.48 for past medical, $60,000.00 for past pain and suffering, $5,000.00 for future pain and suffering, $25,000.00 for mental anguish, $5,000.00 for loss of enjoyment of life, $1,500.00 for scarring and disfigurement, and $10,000.00 for Mr. Hunter's loss of consortium. The trial court found that Cabrini is a qualified health care provider under the Louisiana Medical Malpractice Act; therefore, the PCF is liable for all amounts over $100,000.00.

The trial court's judgment was signed on February 27, 2013. The PCF appeals the amount awarded for past pain and suffering and the amount awarded for mental anguish. Cabrini appeals the same amounts, as well as the amounts

awarded for future pain and suffering, awarded for past medical expenses, assessing certain deposition costs and expert costs as court costs.

## ASSIGNMENTS OF ERROR

On appeal, Cabrini asserts the following assignments of error:

1. The trial court erred in failing to apply the doctrine of mitigation of damages, or in the alternative, finding that the episodes of irritation, after the decubitus ulcer healed, were related to the decubitus ulcer.

2. The trial court erred in awarding certain damages for certain medical bills to the Plaintiffs based in part on testimony that should have been excluded from evidence.

3. The trial court erred in awarding certain deposition costs to experts who did not testify at trial and expert costs to persons who did not testify at trial.

4. The trial court erred by granting excessive damages to the Plaintiffs in this action.

In addition, the PCF asserts the following assignment of error:

The trier of fact award of damages was excessive for Past Pain and Suffering in the amount of $60,000.00 and Mental Anguish in the amount of $25,000.00 for a single, superficial decubitus ulcer in the sacrum area that completely healed in three (3) months and one (1) week.

## LAW AND ANALYSIS

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). This standard of review is deferential. "When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings." *State v. Hunt*, 09-1589, p. 6 (La. 12/1/09), 25 So.3d 746, 751.

As the supreme court stated in *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257, 1260-61 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059:

The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. *Gaspard v. LeMaire,* 245 La. 239, 158 So.2d 149 (1963); *Ballard v. National Indem. Co. of Omaha, Neb.,* 246 La. 963, 169 So.2d 64 (1964); *Lomenick v. Schoeffler,* 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Industries, Inc.,* 341 So.2d 332 (La.1976); *Bitoun v. Landry,* 302 So.2d 278 (La.1974); *Spillers v. Montgomery Ward & Co.,* 294 So.2d 803 (La.1974).

*Past pain and suffering; Mental anguish*

Hunter's medical records show that, after it was discovered, the wound spread to both buttocks, covering a "butterfly area" that drained with "exudate between cheeks." Multiple medical professionals testified at trial that the wound was painful, foul-smelling, and required frequent cleaning. Hunter testified that the wound caused her pain and suffering and that her underwear would stick to the wound. She further testified that the required treatment was humiliating, as it required her to expose her buttocks. After reviewing the record, we cannot say that the trial court manifestly erred in reaching its amount for past pain and suffering, nor its amount for mental anguish.

*Future pain and suffering*

Defendants argue the trial court's award for future pain and suffering is manifestly erroneous because Hunter has failed to bear her burden of proof that the discomfort and irritation of the wound site is the result of the ulcer. Dr. Kohatsu testified the skin on the wound site was permanently damaged and could create problems for Hunter in the future. Hunter testified that her continued discomfort stems from the wound. Hunter testified at trial:

Q: Do you know the distinctive type of pain you're experiencing when your area is irritated?

A: Yes.

4

Q: You don't confuse it with any other condition?

A: No.

Q: You're aware of what's causing your irritation?

A: Yes.

Dr. Kohatsu testified that the skin on the wound site could continue to cause discomfort, as it is permanently damaged despite the fact that the wound has healed. He testified that the wound will continue to affect that skin's temperature regulation and resistance to infection. Dr. Steve Springer, who also examined Hunter's wound site, testified that the abnormal skin could result in pain and additional infections. Given the trial court's broad discretion to assess the credibility of witnesses, we find no manifest error in concluding that Hunter demonstrated causation between the wound and her continued pain and suffering.

Alternatively, Defendants argue that Hunter failed to mitigate her damages by not returning immediately to her original treating physician, Dr. Kohatsu, when she continued to experience irritation from the wound site after it had healed. Hunter testified at trial:

> Q: When you had your episodes of irritation, did you remember Dr. Kohatsu's instructions that you were to follow up with your family doctor if you had any problems with your decubitus ulcer? That had headed.
>
> A: If it was beyond my control of taking care of it, then I was to contact a doctor.

It is clear from the record that Hunter followed her doctor's instructions in caring for the wound in order to keep the problems it caused under control. For example, she testified that she kept the wound dry, cleaned the wound if she began sweating, and avoided prolonged sitting – all per her doctor's instructions. The record contains no evidence suggesting the trial court erred in concluding Defendants did not prove Hunter failed to mitigate her damages. To the contrary, the record shows

Hunter has taken measures to care for the wound and follow Dr. Kohatsu's medical advice, allowing her to control irritation from the wound and rendering additional doctor's visits unnecessary.

*Past medical expenses*

Defendants argue that, because Dr. Steve Springer testified to issues not covered on cross-examination during a redirect examination – Hunter incurred increased medical expenses due to the wound – that the trial court erred in awarding Hunter certain medical expenses. Dr. Springer testified:

> Q: … she couldn't be sent home with a wound like that, could she?
>
> A: Ahh, I, eh, no. I mean, ah, if … if it's found smelling and there's sign [sic] of periwound infection, and there's active increasing necrosis, eh, you would, you would wanta address multiple things. The patient's nutritional level; ah, do wound cultures; you may wanta do blood cultures to make sure she's not trying to get septic …

Counsel for Cabrini did not object to this question nor to Dr. Springer's response. Failure to object to the question waives any objection to that question. *Wyble v. Acadiana Preparatory School*, 07-91 (La.App. 3 Cir. 5/2/01), 956 So.2d 722, *writ denied*, 07-1178 (La. 9/14/07), 963 So.2d 1004. Further, even assuming Hunter's counsel's question was outside the scope of the preceding cross examination, the trial court has discretion to allow questions outside the scope of cross examination. *State v. Wiley*, 614 So.2d 862 (La.App. 2 Cir.1993). Because the record shows no abuse of such discretion, we find this assignment of error is without merit. Furthermore, Hunter's medical records and Dr. Kohatsu's testimony as to the state of the wound and its development present the same evidence, that if not for the ulcer, Hunter's medical expenses at the hospital would have been lower. The trial court did not manifestly err in awarding Hunter medical expenses which the record shows were incurred as a result of the ulcer.

*Deposition costs*

Cabrini argues that because the depositions were not put into evidence, it should not be required to pay the costs of those depositions. "It is well settled that a trial court has broad discretion in the assessment of court costs." *Davis v. Sonnier,* 96-515, p. 19 (La.App. 3 Cir. 11/6/96), 682 So.2d 910, 920. In addition, while it is the general rule that the party cast in judgment is taxed with costs of a proceeding, "the trial court may assess the costs of a suit in any equitable manner and its assessment of costs can only be reversed by the appellate court upon a showing of an abuse of discretion." *Este´ v. State Farm Ins. Cos.,* 96-99, p. 4 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 859.

On this issue, Defendant offers *Hendrix v. Maison Orleans I, L.L.C.*, 11-1349 (La.App. 4 Cir. 9/26/12), 101 So.3d 1013, *writ denied*, 12-2426 (La. 1/11/13), 107 So.3d 616, in which the fourth circuit found the trial court abused its discretion in awarding costs for depositions that were not used at trial. Unlike *Hendrix*, in the instant case it is clear from the record that only after the depositions were taken did Defendant stipulate to liability. As the trial court noted in its written reasons for judgment on costs, "[T]he parties stipulated that Cabrini was liable, and the trial involved only the element of damages. However, earlier in the case, the issue of liability was contested." Because this stipulation was derived from these depositions, it cannot be said that no effect was derived at trial from the depositions. Given the broad discretion of the trial court to assign costs, we affirm as to their costs.

CONCLUSION

For the foregoing reasons we affirm the trial court's judgment.  All costs of this appeal are assessed equally to Defendants.

**AFFIRMED.**